Matter of the Estate of John A. Mitchell, Deceased.

(Surrogate's Court, New York County, February, 1921.)

**Wills — construction of — specific legacies — corporations — partnership agreements.**

An agreement between partners, contemplating the incorporation of their business as a publishing company, stated that it was the desire of both to retain within their own control, so far as possible, the entire management of the corporation about to be formed, with power to purchase each other's stock. *Held*, that this option only existed during the lifetime of the parties. One of the partners who at his death, twenty-five years later, was the owner of three-fourths of the capital

stock of the company, bequeathed one hundred and eighty shares thereof to his sister, cousin and three of his associates in the business, in different allotments, with proviso that if any of said legatees should not survive him the share which such legatee would have received should go to his or her surviving children in equal shares, or in default of such issue surviving the testator, then such shares should go to the next of kin of each of the original legatees in equal shares, *per stirpes* and not *per capita.* The remaining shares owned by testator were bequeathed in trust for his wife for life, and at her death to several of his business associates, including the three previously remembered. *Held,* that all the legacies were specific and the legatees were severally entitled to a *pro rata* distribution of a dividend on the stock, declared within a year of the death of the testator.

During a four months' illness of a servant who had been in testator's employ for the fourteen months preceeding h's death, he paid her medical and hospital expenses and though she was not discharged she received no salary. The hospital expenses were in excess of her wages during her absence, and upon resuming work she continued in the service of the testator until his death, seven months later. *Held,* that under a clause of the will reading: " I give and bequeath  *  *  *  to each of my other servants who are in my employ  *  *  *  at the time of my death and have been so employed by me for not less than one year preceding my death, the sum of five hundred dollars," said servant was entitled to the legacy.

PROCEEDING upon the judicial settlement of the accounts of executors.

Spencer, Ordway & Wierum (Nelson S. Spencer, of counsel), for executors Charles Holt and Samuel H. Ordway.

Root, Clark, Buckner & Howland (Grenville Clark and Cloyd Laporte, of counsel), for objecting legatees.

Murray, Ingersoll, Hoge & Humphrey (Theodore F. Humphrey, of counsel), for executor George Pratt Ingersoll.

Francis J. Hogan, for Mary Broderick.

Surrogate's Court, New York County, February, 1921.    [Vol. 114.

FOLEY, S. On the accounting two questions arise. John A. Mitchell executed his will May 27, 1918, and died about a month later. He bequeathed 750 shares of stock in the Life Publishing Company, of which 180 were given outright to his sister, his cousin and three associates in his business. The remaining 570 shares he gave in trust to his widow for life, and on her death to several of his associates, including the three previously remembered. The weekly magazine *Life* was founded by himself and Andrew Miller in 1882. Mr. Mitchell's interest was three-fourths, and Mr. Miller's one-fourth of the firm. In 1892 the partnership was incorporated, with a capital of $10,000. Mr. Mitchell received 750 shares and Mr. Miller the remaining 250 shares in the company, which each retained up to Mr. Mitchell's death. The former was president, and the latter secretary and treasurer of the company. The business grew from an original capital of $600 to a valuation, in 1920, of $1,000,000.

The first question in dispute is whether the legacies of 180 shares are general, as claimed by the executors, or specific, as contended by the legatees. The decision of this question also involves the payment of a dividend, declared within one year of the death of testator, amounting to $100 per share, or a total of $18,000. If the legacies are specific this amount goes to the legatees; if general, it goes into the residuary estate left to the widow. I hold that the legacies are specific. *Matter of Security Trust Co.*, 221 N. Y. 213, sustains this finding. The 2d paragraph of the will, which relates to this stock, is as follows: " *Second.* I give and bequeath to my sister, Anna M. Richards, one hundred shares of the capital stock of Life Publishing Company; to my cousin, Amelia H. Ames, fifty shares * * *; to Edward S. Martin ten shares * * *: to James S. Metcalfe ten shares

* * *; to Thomas L. Masson ten shares * * *. If any of said legatees shall not survive me, then I give and bequeath the shares of stock which any such legatee would have received under this paragraph if he or she had survived me to his or her children who shall survive me, in equal shares, or if any of such legatees should leave no children surviving me, then I give and bequeath the same to his or her next of kin in equal shares, *per stirpes* but not *per capita.*" The 3d paragraph bequeathed the remaining 570 shares.

In *Matter of Security Trust Co., supra,* 219, Mr. Justice Crane says: " It is the intention of a testator, as gathered from his entire will, which determines whether the legacy be general or specific." A very slight indication of an intention to give shares owned by him when the will is executed is enough to make the legacy specific. *Thayer* v. *Paulding,* 200 Mass. 98.

The indications of intent in this will are just as strong as those in *Matter of Security Trust Company.* The stock of the Life Publishing Company was not publicly dealt in. The corporation here was even a closer one, with but two stockholders. The agreement of 1892 between Messrs. Mitchell and Miller stated: " The parties desire * * * to retain as far as possible the entire management of said corporation so to be formed *within their own* control." Under this agreement also each had the power to purchase the other's stock, in the event of a desire to withdraw or to sell the stock to an outsider. A fair construction of this contract is that this option only existed during the lifetime of the parties. After the death of either, the executor of the deceased did not possess the option to purchase from the survivor. In the present case Mr. Mitchell bequeathed and owned at

his death 750 shares out of a total issue of 1,000, whereas in the *Security Trust Company* case the decedent held and bequeathed 2,024 out of 5,000 shares in the company.   Mr. Mitchell must have known that his executors would not be able to replace the stock bequeathed by him in case he disposed of it, in whole or in part, during his lifetime.   His will disposes of the exact number of shares owned by him at the time it was executed.   At his death he possessed the same amount of stock.   The legatees here were favored relatives and business associates who apparently had helped to make the business successful.   His intention was plainly to give them an immediate interest.   Moreover, he provided for a complete disposition of the stock, to the children or next of kin of the legatees, in case any one predeceased him.   Finally it is claimed by the executors that there is a distinction between the gift of the 180 shares and the gift of the remainders in the 570 shares, because of the use of the word " my " in paragraph 3 referring to the latter, which authorizes the trustees " to retain all of *my* said 570 shares."   This contention cannot be sustained.   The executors concede that the legacies of the 570 shares are specific.   *Tifft* v. *Porter,* 8 N. Y. 516.   There is no actual difference between these two groups.   The words of gift in each case are the same.   In the case of the 570 shares which were left in trust he necessarily conferred powers upon, and gave instructions to, his trustees.   Certain of the legatees receive shares under both clauses.   The use of the word " my," therefore, does not limit one group but characterizes all of the legacies as specific.   2 Jarman Wills (6th ed.), 1028, 1077; *Kunkel* v. *MacGill,* 56 Md. 120.   For these reasons the legatees are entitled to the specific shares and to a *pro rata* distribution of the dividend of $18,000, but without interest.

Misc.]    Surrogate's Court, Westchester County, February, 1921.

The second question has to do with the claim of Mary H. Broderick, one of his servants, under the 5th paragraph of the will, which reads: " I give and bequeath  *  *  * to each of my other servants who are in my employ  *  *  * at the time of my death and have been so employed by me for *not less than one year preceding my death,* the sum of five·hundred dollars.'' The executors dispute her claim. It appears that Mary H. Broderick was employed by the testator for fourteen months, from May 1, 1917, to his death on June 29, 1918. During this period she became ill and was obliged to go to the hospital. Mr. Mitchell paid her medical and hospital expenses amounting to $262. It is true that her salary was not paid during the four months of her illness, but she was not discharged and she was excusably absent. The hospital expenses were in excess of her wages during her absence. As soon as she was able she resumed her work and continued until his death seven months later. It is neither in harmony with the spirit of his will, nor his generous treatment of her, that she should be deprived of this small legacy. I hold that she is entitled to it.

Decreed accordingly.