In the Matter of the Construction of the Last Will and Testament of ROBERT J. STRASENBURGH, Deceased.

Surrogate's Court, Monroe County, December 7, 1928.

*A. G. Dutcher*, for the executor.

*Castle & Fitch*, for the legatee.

*Sutherland & Dwyer*, for a creditor.

*Bowman & Van Schaick*, for a creditor.

*J. Sawyer Fitch*, special guardian.

FEELEY, S.   Since this testator's death, certain dividends have been declared and become payable on the stock of a corporation founded and conducted by him in his lifetime and known as the R. J. Strasenburgh Company.   By his last will, dated June 19, 1925, he made three bequests of shares in this corporation — to his son, and to two of his associates prominent in his business, respectively — in form and language that is the same in each legacy, save for the name of the legatee and number of shares — the 3d clause, for example, being as follows: "I give and bequeath unto my son, Edwin G. Strasenburgh four thousand (4000) shares of the capital stock of the R. J. Strasenburgh Company."

Likewise, by the 4th and 5th clauses, respectively, he bequeathed 400 shares to H. F. Snider and 400 shares to F. H. Strohm, neither of whom would have been his heirs.   In the 16th clause testator directed " that upon all legacies given to my heirs at law and next of kin, all estate and inheritance transfer taxes be paid from my estate and I direct that distribution be made of my securities in kind, as far as practicable."   The executor now asks this court to determine whether those dividends belong to the several legatees named, or fall into the general residue of the estate.

All parties agree that such dividends, " if the legacies be general, pass under the residuary clause of the will, but if specific, follow the stock into the hands of the specific legatees " (*Matter of Security Trust Co.*, 221 N. Y. 213, 217); and especially so, where the bequest was coupled with the express provision that the shares of stock were bequeathed " together with all the rights and privileges which may now or hereafter appertain to the same." (*Thayer* v. *Paulding*, 200 Mass. 98.)

It is also agreed that " It is the intention of a testator, as gathered

from his entire will, which determines whether a legacy be general or specific." (Id.)

It is also clear that in applying a will to the testator's estate or property, the claim that a legacy is specific ordinarily, requires the court to look into the circumstances, other than oral declarations of the testator, to see whether at the date of the will the testator then had on hand the self-same — rather than the like — property that is particularly described in the legacy in question; because a legacy is properly called specific if it give, without any implied equivalent, a certain thing, particularly described and distinguished from all others of the same kind belonging to the testator, usually at the time of the making of the will or in some cases at the date of his death, as where he specifies. a particular thing " of which I may die possessed.".

" If the legacy be given with reference to a particular fund only as pointing out a *convenient* mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fail, but will receive the legacy out of the general assets. If, however, the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with payment, it is deemed specific, and consequently liable to be adeemed by the alienation or destruction of the object."

The line of distinction, then, between specific legacies and those that are ordinary general legacies, or demonstrative general legacies, is that in both the latter the intention is that the legatee be paid, in any event, even though there be a failure of designated convenient source, or a change in the form of investment, but in the former that the legacy is meant to be paid by the delivery only of the identical thing specified, and if it be not in existence at the date of the testator's death, the legatee, in that event, does not, *vi legis*, get its equivalent out of the general estate. (*Crawford* v. *McCarthy*, 159 N. Y. 514, 518, 519.) Being of a conditional nature, the specific legacy is not favored; at least, the policy of the law requires the condition to be clearly expressed or shown; and the courts prefer to read a legacy as a general one, in case the condition be left in doubt. The general presumption is the testator intended the legatee to receive something in any event. If the condition be satisfied, the specific legacy, owing to. its particularized nature, has this characteristic also, that title to the chattel specifically bequeathed is deemed to vest upon the death of the testator, not in the executor, under the common-law fiction, but in the legatee, and good delivery is made by the executor's mere assent to title, without actual delivery (*Matter of Columbia Trust Co.*, 186 App.

Div. 377); and the legatee may, generally, maintain replevin. For this reason also the dividend, as an accessory or by-product, follows the ownership of the principal.

Inasmuch as intention manifests itself, or is to be sought, in a variety of circumstances or " equities," and in a diversity of form in testamentary expressions seemingly similar, it is almost impossible to find cases exactly alike. As the gift in question here is one of a certain number of shares in a certain company, and not a gift of a certain sum of money in a certain stock or bond, or out of the income of a certain security, we may leave out of consideration the older cases holding the latter to be demonstrative (*Newton* v. *Stanley*, 28 N. Y. 61), as compared with *Davis* v. *Crandall* (101 id. 311). The form alone is enough here, without referring to other differentiating facts. Even in the cases last mentioned, the form alone was not decisive. Chancellor KENT said: " The reasoning on this subject is, that if the legacy is meant to consist of the security it is specific, though the testator begins by giving the sum due upon it. A legacy of a debt, unless there is ground for considering it a legacy of money, and that the security is referred to as the best mode of paying it out of the assets, is as much specific as the legacy of a horse or any movable chattel. If the specific thing is disposed of or extinguished, the legacy is gone." (*Walton* v. *Walton*, 7 Johns. Ch. 258.)

In the case last cited the bequest was of " all my right, interest and property in *thirty shares*, which I own in the *Bank of the United States*, and in *four shares* which I own in the companies of the northern and western inland lock navigation;" and it was held specific in 1823.

Thirty years later, the Court of Appeals, in *Tifft* v. *Porter* (8 N. Y. 516), by a majority of one vote, laid down the rule that a gift of stock is a general legacy when there is nothing *in the will* to indicate that it is a gift of the *testator's* stock; and that the mere possession by the testator at the date of the will of stock of equal or larger amount than the legacy, will not, of itself, make the bequest specific. To-day no one doubts the right of the court to go outside the will to resolve a doubt about a legacy being specific; and as to the effect to be given to the exact amount having been on hand at death that was given in drawing up the will, it was held in Massachusetts in 1827, in a very similar case, that from such fact " the presumption is strong that he intended to give the stock of which he was the owner." (*White* v. *Winchester*, 6 Pick. 48.) The most our courts have since said of that fact is that " though not controlling, it is significant," referring to the Miller will. (*Matter of Security Trust Co.*, 221 N. Y. 213, at p. 221.) In *Tifft* v. *Porter* (8 N. Y. 516),

testator, having at the date he signed his will 360 shares of stock of the Cayuga County Bank stock, bequeathed therein to his wife "240 shares of bank stock in the Cayuga County Bank at Auburn * * * to be delivered to her as soon as may be after letters." Also, in the same form, he gave 120 shares to his daughter, to be delivered "as soon as letters testamentary shall be issued." He died in June, possessed of the same 360 shares mentioned. In August following the bank declared a dividend payable September first. In June, within a week of probate and letters, these lots of stock were delivered to the respective legatees; but later on the executor received the dividends. The legatee's judgment therefor against the executor was reversed on grounds stated above, the legacies being finally held not to have been specific.

The court refers to a ruling, previously established, that very slight changes in the form of the bequest — as for example, the prefix "my," or some equivalent expression of ownership, would have been regarded as sufficient to make the legacy specific. So, in the *Cramer Case* (35 Misc. 17), it was held in 1901 that bequests in amounts named "of the following stocks and bonds now held by me," enumerating them; and other bequests of the sum of ................ dollars, par value of certain capital stock, enumerating it, were not sufficient in form to make these legacies specific; but that they would be so construed where, in other parts of the will, testatrix refers to stocks and bonds in the plural, guards them against inheritance taxes, prohibits her executor from selling them, and declares that if sold in her lifetime the legatees shall have in money what the securities would have brought at the time of her death. Such incidents, some extrinsic, were pointed out in the *Miller Case* (*supra*) by my predecessor — the exact amount found on hand at death as was owned at the date of the will; the provisions exempting the legacies of stock from taxes and expenses; the direction that the legatees be present when the deposit box containing this stock was opened; and the fact that elsewhere in the will he spoke of "my" stock in a subsidiary company selling for the main company, whose stock was bequeathed, which latter was closely held among the group favored in the bequests that were engaged in the manufacture of carbon paper, on a secret process under "lock and key," whence its name, Kee Lox. His ruling that those legacies were specific, although in form they merely gave a named legatee so many shares of stock in the Kee Lox Company, was approved by the Court of Appeals in the next case in which it discussed such stock legacies, and the last since then. It was followed in the *Mitchell Case* (114 Misc. 371), where a little group that had built up the magazine *Life* were the legatees of one of their

number, the founder; and had as partners, before incorporating, agreed in writing to keep the business in their own control, and to that end gave mutual options on their stock holdings to one another; and the stock was closely held; and the will effectuated the control intended. There legacies were held specific. In form they are like the case at bar.

Our present rule, therefore, may be summarized to be that, while the controlling feature is the intention of the testator as derived from the language used in the bequest construed in the light thrown on it by all the other provisions of the will, and the contemporaneous circumstances, other than declarations, at the date of the will, "a bequest generally of certain bonds and stocks, without further explanation, and without more particularly referring to and marking the corpus of the identical bonds and stocks, does not amount to a specific legacy, even though, at the time of the execution of the will, the testator may, in fact, have been possessed of bonds and stocks of that description, to an equal amount or more * * *. At the same time, very slight changes in the form of the bequest— as, for example, the prefix of ' my ' — have been regarded as sufficient to make the legacy specific " (*Douglass* v. *Douglass*, [1898] 13 App. D. C. 21; 6 A. L. R. 1377); as will also any other or equivalent indication, even though it be very slight, of an intention to give, without any implied equivalent, the same shares owned by testator when the will was executed. (*Thayer* v. *Paulding*, 200 Mass. 98, cited in the *Miller Case* [*Matter of Security Trust Co.*], 221 N. Y. 213.)

In the case at bar there can be no doubt as to the particular character or the individuality of the thing or source described in these legacies. R. J. Strasenburgh made these bequests of the stock of the R. J. Strasenburgh Company, his own company, that he founded and conducted down till about the time he made this will. In the will he does not say " my " shares, nor " all shares belonging to me," as does *Matter of Evans* (104 Misc. 641, 643); yet any testator, if he mentions a particular thing generally, means to give what he then has of that kind; and if it be ascertained that at his death he had on hand the exact amount of stock shares which he gave by such legacies, this fact alone, " though not controlling, is significant." Being shares in his own business, run by him down till about the date of the will, almost as a one-man company, these shares were not offered to the public, but were closely held, by him and his wife — the greatest part of the stock being in their hands — and the rest being in the hands of his trusted business associates mentioned in the will, and some small lots held by employees, it was not likely he referred in the will to shares thereafter to be

acquired either by him or by his executor; but intended those he then had and later kept. Some of these legatees were recipients of gifts of small lots of this stock at the hand of this testator in his lifetime.

For about two years before the date of his last will he held 7,770 shares of a total issue of 11,427 shares of this stock; and at the time of his death his holdings of it totalled 7,670 shares. At no time between the date of his will and that of his death did he hold less than the 7,470 shares, which is the total number of these shares bequeathed in and by his last will. As to the greatest part of his holdings, and certainly to the extent of more than 4,800 shares, it is true that during all this period he held the same number of shares, under the same certificates that were originally issued to him therefor. These holdings were under ten or eleven certificates, only one of which was for an even 400 shares of stock, and none for an even 4,000 shares; but a total of 4,000 could be made by combining certificate No. 19 for 3,992 shares, with certificates 14 and 15 each for 4 shares — all of which, apparently, had been issued at the date of the will. Aside from testator's holdings, all the other outstanding shares of this company's stock, if taken together, would total less than the 4,800 shares in question here. In this regard, the observation made by an Indiana court is pertinent: "If it appears that the testator knew that he alone owned a sufficient amount of stock to satisfy a legacy, where stock is devised, such legacy will be regarded as specific because the will must necessarily have referred to the shares owned by the testator." (*New Albany Trust Co.* v. *Powell*, 29 Ind. App. 494, 500.)

We are more concerned here with the dividends on these three legacies — one of 4,000 shares, and two of 400 each — than with those on an additional sum of 2,670 shares, the income on which he bequeathed to his widow for life, with remainder over to their three children equally. Such a legacy of income for life, presumably, carries dividends and income from and after the date of the testator's death. The 16th clause, above quoted, makes these legacies tax free, and directs distribution of testator's "securities in kind, as far as practicable." To this extent, they are more specific than are the others to non-members of his family. Directing our attention, then, more to the outright legacies to his three associates, prominent in the company, we note it also appears that about the time he made his last will, he gave his attention almost entirely to his real estate investments, and left the business of this corporation in the hands of these three associates, one of whom was his son and its treasurer, the other its secretary, and the third its general manager.

The only doubt that might be entertained is whether two of these legacies are any the less specific because they each must be segregated from a larger certificate, or made up from two or more certificates from among the particular certificates he had when he signed the will and kept till he died, only one of which was for an even 400 shares, and none for an even 4,000.

Testator does not, in form, give a sum of money " in " that stock, nor " out of " that stock. So it is hardly proper to say that his holdings of that stock are such a " convenient source " as makes the legacy demonstrative, although some of his gross holdings, as represented in certificates, must be split to satisfy one of these legacies of 400 shares, and combined to make up the legacy of 4,000 shares. Counsel for this last named legatee has argued that " these certificates, for ordinary purposes, represent but do not constitute his interest,"— his property, and that of the testator, consisting, rather, of the right in common as regards the assets of the corporation. (*Holmes* v. *Camp*, 219 N. Y. 359, 367.) In so far as these several legacies must come out of the mass of his holdings, the general rule stated in *Hosking* v. *Nicholls* ([1842] 62 Eng. Rep. 979; 6 A. L. R. 1385) is pertinent, although the facts there were slightly different. There was a legacy of £4,000 capital stock in three per cent Consolidated Bank securities, or in whatever government funds the same should be invested. It will be recalled that in England the word " funds," in such context, means the public securities or stock issued by the government for its national debt. The court there said: " The question is whether this legacy is merely demonstrative or specific. It has always been held that a legacy of *stock out of stock* is specific, being the gift of a part of a specific fund. Here the testator intimates an intention that the stock shall be taken, not out of his general personal estate, but out of whatever government funds he may possess; therefore, only government funds are to be resorted to. It is not a bequest of money out of stock, but stock out of stock. It is a specific bequest."

In such a case, replevin ceases to be a universal test of a legacy being specific, because until allotment in certificate, the legatee could not identify, by the language of the will, any particular shares as his own bequest. Ademption also, in such cases, ceases to be a complete test, in itself, of the specific nature of a legacy, where the ademption is partial only, and the units in the mass are uniform and of equal value. Ordinarily, had this testator disposed of a lot of 400 shares in his lifetime and after making this will, it would be impossible to say " whose 400 " legacy it was, that was thus lost, of the two so made. For all that, there can, apparently, be a gift of a particular fraction of a particular thing, such as

corporate shares, without any implied substitute in cash if enough be not on hand at death to meet the call of the will. In the case of the Miller will, the Court of Appeals referred to what was there an academic query, as to what would be done if testator had died owning less of the identical lot than he bequeathed, by saying, in passing, that in New Hampshire " the situation was met by dividing the stock left by testatrix proportionately among the legatees." (*Drake* v. *True*, 72 N. H. 322.) I have not found any New York authority along that line.

It was recently held in Maryland that a will was valid which provided that two strings of pearls, united by a clasp into a single necklace, should go one each to two legatees, without specifying which shall go to either, but devolving the allotment on the executor; and that the legacies were not adeemed by restringing them into one necklace; and that the legatees of these separate strings of pearls, which were combined into one string at the time of the testator's death, were entitled to a division of the pearls, as in the case of two owners of property indistinguishably commingled by a cause beyond their control. (*Elwyn* v. *DeGarmendia*, [1925] 40 A. L. R. 553.)

It was also held in California that a devise of an undivided portion of specified real estate must be deemed specific rather than demonstrative; and that where a testator owned an undivided interest in a tract of land, he may leave a certain fractional part of his interest to a particular devisee, and the gift may be regarded as a specific devise. (*Matter of Bernal*, Ann. Cas. 1914D, 26, and note.)

The testator having specified the tract, and designated a certain fraction, the fact that the actual ultimate allotment of this share is indefinite, is not enough to show he intended its equivalent to be substituted for it, if the tract were disposed of in his lifetime. The same is true of these 7,670 shares of stock considered as a source whence these three several legatees are to receive their certain allotments thereof, to the gross extent of 4,800 shares. Moreover, in so far as concerns testator's son, E. G. Strasenburgh, we have the explicit direction in the will that " distribution be made of my securities in kind, as far as practicable."

I conclude, therefore, the dividends in question here belong to the several legatees respectively, and do not fall into the residuary estate.

Let a decree be made accordingly.