In the Matter of the Estate of JAMES V. FREEMAN, Deceased.

Surrogate's Court, Kings County, February 25, 1931.

*Henry C. Field*, petitioner in person.

WINGATE, S.  It is a familiar principle that judicial decisions are primarily designed to furnish future rules of conduct for the general public.  Since, therefore, the individuals who may base their future actions upon determinations by the courts are many, whereas the parties to any particular action are necessarily limited in number, it is obviously of greater importance that sound fundamental principles should be followed rather than that the convenience or interest of particular litigants be served.

The question raised in the case at bar concerns the proper classification and consequent characteristics of a certain legacy of thirty-eight shares of stock in different corporations given by the second item of the codicil to the will of this decedent.  This bequest, so far as here material, reads as follows:

" *Second*. I give and bequeath unto my Trustees hereinafter named one-half of my interest in 58 Willow Street Corporation, and the following shares of stock, to wit:

" Six (6) shares of the Preferred Stock of the Central Leather Co.

" Five (5) shares of the Preferred Stock of the United States Rubber Co.

" Six (6) shares of the Preferred Stock of the Reading Co.

" Six (6) shares of the Common Stock of the Norfolk & Western Railway Co.

" Four (4) shares of the Preferred Stock of the Baltimore & Ohio Railroad Co.

" Eleven (11) shares of the Preferred Stock of the National Enameling & Stamping Co.

" to hold the same and to pay the income thereof to my sister-in law, Alice H. Weeks, during her life * * * ."

The question in controversy is whether or not the gift of these shares of stock amounts to a general or a specific legacy. The executor contends, largely on the authority of *Matter of Security Trust Co.* (221 N. Y. 213), that it is specific. The contrary opinion brings it within the terms and decision of the early case of *Tifft* v. *Porter* (8 N. Y. 516), and makes it general.

The subject of preference and abatement here involved received rather extended attention from this court in *Matter of Smallman* (138 Misc. 889), but this particular phase was therein referred to largely by dictum. In the present case, however, the authority of *Tifft* v. *Porter* is directly challenged and the question, therefore, deserves careful consideration.

In *Tifft* v. *Porter* the testator, at the time of the execution of his will and also at the time of his death, was the owner of 360 shares of stock of the Cayuga County Bank. By testamentary direction, he gave " 240 shares of the bank-stock in the Cayuga County Bank " to his wife and 120 shares of like stock to another person. At page 518 the court held that these legacies were general, using the following frequently quoted language: " A legacy is general, when it is so given as not to amount to a bequest of a particular thing or money of the testator, distinguished from all others of the same kind. It is specific, when it is a bequest of a specified part of the testator's personal estate, which is so distinguished. (Wms. on Ex. 838.) In those cases in which legacies of stocks or shares in public funds have been held to be specific, some expression has been found from which an intention to make the bequest of the particular shares of stock could be inferred. Where, for instance, the testator has used such language as, ' my shares,' or any other equivalent designation, it has been held sufficient. But the mere possession by the testator, at the date of his will, of stock of equal or larger amount than the legacy, will not of itself make the bequest specific."

At page 521 the court states the reasons which incline judicial tribunals to hold a legacy general, rather than specific, as follows: " The inclination of the courts to hold legacies to be general, rather than specific, and on which the rule is based, that to make a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger, that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain, till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard,

and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which, in the first instance, prompted the selection of the legatee, requires, as it ought, clear language to convey that intention. The rule as settled, accords best with the dictates of experience as to the probable purposes which actuate men in disposing of their property by will."

The executor in his memorandum in the case at bar points out that this was a four to three decision and strongly intimates that it is no longer a controlling authority. This court does not so read the later decisions. In *Newton* v. *Stanley* (28 N. Y. 61) the opinion reads (at p. 65): " Courts are not inclined to hold a legacy to be specific rather than general, unless its terms clearly require such a construction."

In *Brundage* v. *Brundage* (60 N. Y. 544) there was a bequest of twenty shares of New York Central railway stock to a certain beneficiary for life. The court in holding it a general legacy said (at p. 548): " It is a general rule, that a will speaks from the time of the death of the testator. This rule is not excepted from, in the case of a general bequest of a particular description, as of an ascertained number of shares of a particular stock. (See *Robinson* v. *Addison*, 2 Beav. 515.) It is to be observed, that he did not bequeath to her any specific share, definitely described by numbers or otherwise. Had he died without owning any shares of the stock of the New York Central Railroad Company, the legacy to his widow would not have been adeemed, and it could have been made good, by the purchase and transfer to her of any shares to the number given, to be had in the market. * * * it is not different if, to satisfy the legacy, the executors make use of shares found among the assets of the testator." As recently as the spring of 1929, the Court of Appeals expressly followed the ruling of *Tifft* v. *Porter*, in *Matter of Lendle* (250 N. Y. 502) where legacies aggregating 475,000 German marks were given, saying (at p. 505): " The bequests were of German marks which are to be regarded, not as a measure of value, but as a commodity. They are like a general bequest of stocks or bonds, to be satisfied in kind. (*Tifft* v. *Porter*, 8 N. Y. 516; *Evans* v. *Hunter*, 86 Iowa, 413; 17 L. R. A. 308.) If the testator had never owned any marks or having had them to the amount of 475,000 marks had disposed of them in his lifetime, it would have been the duty of the executrix to procure German marks with which to satisfy the legacies."

In *Matter of King* (122 App. Div. 354) the testator gave bequests of 100 shares of stock to each of two legatees, which the court held to be general legacies, citing and following *Tifft* v. *Porter.* In *Matter of Werle* (91 Misc. 398) testator bequeathed fifteen shares of American Car and Foundry Company and twelve shares of the United States Steel Corporation, which shares were in his possession both at the time of the execution of the will and at his death. At page 402 Surrogate SCHULZ said: "The question is not a new one and I believe is no longer debatable." He thereupon quoted at length from *Tifft* v. *Porter*, holding the legacies general.

Other decisions likewise quoting and following this leading case are *Scofield* v. *Adams* (12 Hun, 366, 369) and *Waldo* v. *Hayes* (96 App. Div. 454, 457). (See, also, *Matter of Liell*, 139 Misc. 513.)

No effort has been made to collect the numerous decisions* in courts of first instance where like results have been reached, since, upon primary principles, their determinations would have no effect upon the clearly enunciated rules of appellate courts.

It seems entirely apparent, therefore, that the general rule stated in *Tifft* v. *Porter* is firmly established in the jurisprudence of this State.

This rule, like all others in the same category, is merely one of presumed intention applicable in the absence of countervailing circumstances demonstrable from the terms of the will, and, therefore, in no wise conflicts with the basic rule noted by the Court of Appeals in *Davis* v. *Crandall* (101 N. Y. 311 at p. 319) that "Whether a legacy shall be considered specific depends upon the intention of the testator or testatrix, to be derived from the language used in the bequest, construed in the light thrown upon it by all the other provisions of the will."

On fundamental principles, therefore, where the testator has expressly evinced a contrary intention, either in the manner indicated in *Tifft* v. *Porter* itself or otherwise, such contrary intention must be given effect.

The difficulty experienced by the executor in the case at bar arises from the combined failure carefully to analyze the determination in *Tifft* v. *Porter* and to differentiate its facts from those passed upon in *Matter of Security Trust Company* (221 N. Y. 213); *Matter of Strasenburgh* (136 Misc. 91), and similar cases, among which may be noted *Matter of Mitchell* (114 Misc. 370).

In *Tifft* v. *Porter* the ruling is by express terms limited to "legacies of stocks or shares *in public funds,*" which in modern parlance is the equivalent of stocks or bonds dealt in by the general

public. The decisions in the *Security Trust, Strasenburgh, Mitchell* and similar cases all concerned shares in closely held concerns.

The securities in enterprises commonly purchased and sold by the general public frequently differ in no essential particular from currency. This is especially common with such securities as Liberty bonds. On the other hand, where the stocks bequeathed represent complete or partial control of a personal, closely held, private enterprise, it is obvious that different considerations prevail. In such a case, a gift of the controlling shares amounts virtually to a gift of the business. If, therefore, the testator has, in his lifetime, disposed of such indicia of ownership, a determination that the executors in such a case should be required to go out and repurchase them or the business which they represent, would be a palpable absurdity, placing the estate at the absolute mercy of the individual who, at the moment, possessed control. Such absurdities will not be indulged by the courts, but their refusal so to do in no wise invalidates the rule of *Tifft* v. *Porter*, which does not purport to cover such circumstances.

The facts in the three cases referred to, were, in *Matter of Security Trust Co.* (221 N. Y. 213) the gift of shares of a corporation known as Kee Lox Manufacturing Company, which testator had himself organized and substantially all of which stock he owned; in *Matter of Mitchell* (114 Misc. 370), a bequest of certain shares of the Life Publishing Company, which the testator had organized and with which he was prominently connected up to the time of his death, owing the controlling interests; and in *Matter of Strasenburgh* (136 Misc. 91), the gift of stock in Strasenburgh & Co., founded and conducted by the testator in his lifetime.

While the Court of Appeals in the *Security Trust Co.* case reaches a result differing from that in *Tifft* v. *Porter*, as a consequence of the essentially unlike circumstances, there is nothing therein decided or implied which impairs its authority. This fact is further emphasized by its express adherence thereto in *Matter of Lendle* (*supra*). It is simply a case of differing legal principles being applicable to diverse states of fact.

The same observations apply to the *Strasenburgh* opinion where (at p. 96) the court, as one of its fundamental bases of decision, notes: " Being shares in his own business, run by him down till about the date of the will, almost as a one-man company, these shares were not offered to the public, but were closely held, by him and his wife — the greatest part of the stock being in their hands — and the rest being in the hands of his trusted business associates mentioned in the will, and some small lots held by employees, it

was not likely he referred in the will to shares thereafter to be acquired either by him or by his executor; but intended those he then had and later kept."

It must, therefore, be apparent in the present case that the bequest being merely of unidentified shares of stock generally traded in by the public, the gift is general and not specific, and consequently was not adeemed by the disposal by testator during his lifetime of securities of like nature and amount.

Proceed accordingly.