In the Matter of the Estate of WILLIAM G. MOORE, Deceased.

Surrogate's Court, New York County, April 13, 1934.

*George Flint Warren, Jr.* [*John Edmond Hewitt* and *Charles Halsted* of counsel], for the deceased trustee.

*Samuel S. Winter* [*Samuel S. Winter* and *A. Georges Sidelie* of counsel], for John Pomeroy Hickey and others, as executors.

*Herman Goldman* [*Milton J. Levitt* of counsel], for the respondents Abraham L. North and others.

*McDermott & Turner*, for Launcelot Stevenson, as executor, etc., of Laura Moore, deceased.

*Ernest W. Stratmann*, for Hattie E. Dagner, individually, and as executrix, etc., of George J. Dagner, deceased.

*Edward A. Werner*, for Philip A. Moore, individually, and as executor, etc., of Roger B. Moore, deceased.

FOLEY, S. This is a trustees' accounting in which preliminary questions of the construction of the will have arisen. Objections to the account have also been filed. The testator died in 1916. By his will he created a trust of all his residuary estate for the benefit of his incompetent widow during her life. The will contains a further provision that should the widow regain her mental faculties, the trust was to terminate and the entire residuary estate was to be turned over to her. The will then provides that the remainder of the trust be distributed on the death of the widow, unless she become competent prior thereto. The widow remained incompetent until her death.

Despite the fact that the testator bequeathed a definite portion of the remainder to a named person in words of present gift, a controversy has arisen as to whether or not the remainder interest was vested or contingent.

Forming part of the corpus of the residuary trust were 889 shares of the stock of H. B. Kirk & Co. The stock of this corporation was

closely held by the decedent and his business associates, George J. Dagner and Launcelot Stevenson.

In distributing the remainder of the trust upon the death of the widow, the testator made a distinction between this stock and the other property in the residuary estate. By paragraph 9-a of the will he gave 250 shares of this stock to his business associate, George J. Dagner. By paragraph 9-b he gave 13 shares to Launcelot Stevenson and by paragraph 9-c he gave 626 shares of the same stock to his executors and trustees to be held on a further trust. Each of these paragraphs under which the stock is to be distributed begins with the words, " I give and bequeath."

Dagner survived the testator, but predeceased the widow, who died in 1930. Under the terms of the will, Dagner was permitted to purchase for cash at any time during the period of the trust any or all of the shares of stock of H. B. Kirk & Co. Very early in the trust period he exercised this option by purchasing from the trustees 115 shares of the estate stock in the company for approximately $60,000. The proceeds of this sale, in accordance with the expressed direction in the will, were invested in securities and the income paid to the widow.

Two principal questions are involved in the problem of construction:

(1) Whether the gift of the remainder of the specific shares of stock to Dagner vested in him and passed under his will, or whether the gift to Dagner remained contingent and was defeated by reason of his death before the death of the widow?

(2) If it be determined that the remainder gifts were not defeated by the death of Dagner before that of the widow, what method of distribution of the stock or the proceeds by way of sale or liquidation shall be adopted?

Numerous contentions are urged as to whether the remainder gifts of the definite shares of stock to the named persons were specific legacies, or whether there has been an ademption by reason of the liquidation of the shares of stock purchased by Dagner. Complication has also arisen because of the dissolution of H. B. Kirk & Co. All of these questions must be determined by the ascertainment of the intent of the testator as expressed in his entire will. When examined from this standpoint, the plan of the testator is simple and reasonably clear.

He left at his death the identical number of shares contemplated for distribution in his will. Certain stock, not material here, was given by way of absolute specific legacies. The remaining 889 shares became part of the residuary trust, but were earmarked for special treatment during the course of administration in so far as

they might be purchased by Dagner. They were also earmarked for final distribution by the grant of the specific number of shares to the two named individuals and to the trustees and remaindermen of the secondary trust. Aside from the option to purchase given to Dagner, there was no general power conferred on the trustees to sell the stock.

(1) I hold that the death of Dagner, before the widow, did not defeat the gift to him of his share of the remainder. There was a technical vesting of title in him, as of the date of death of the testator, which might be defeated by a sole condition, that is, the attainment of competency by the widow. That condition never having occurred, divestiture never occurred. His interest was devisable and passed under his will. The estate of Dagner became entitled to participation in his place in the remainder. In this connection, it should be pointed out that the words of gift contained in the will were clearly those of present gift. There is no other element of contingency or futurity contained in the will, except the single condition of competency of the widow. As to the 263 shares, there is a definite gift to named persons — Dagner and Stevenson.

The provision for contingent termination of the trust, should the widow become competent, did not defeat the vesting of the interest given to Dagner (2 David Wills, p. 1579 *et seq.; Matter of Wilcox*, 194 N. Y. 288; *Hennessy* v. *Patterson*, 85 id. 91.) The situation here is almost precisely similar to that in *Stringer* v. *Young* (191 N. Y. 157).

There the duration of the trust created was measured by the life of the testator's daughter, and upon its termination, with no intervening return to sanity of the daughter, or marriage and birth of issue to her, the remainder was given in words of present gift to two named nephews and a niece. None of the contingent events occurred. The court held that the named nephews and niece took a vested interest in the remainder of the trust on the death of the testator. In describing the nature of their interest, Judge GRAY said: " It was not a gift limited to take effect upon an uncertain event; it was a gift, which the uncertain event might chance to defeat."

(2) The second question to be determined is the method of distribution of the shares of stock of H. B. Kirk & Co. remaining in the trust, and the proceeds of the stock sold, and of the liquidation.

The testamentary plan clearly comprehended that the proceeds derived from a sale to Dagner should stand in place of the shares of stock which had been sold. The purchase by Dagner in no way constituted an ademption or abatement of his defined interest in the

remainder. In other words, the fact that 115 shares had been withdrawn by him could not defeat his right to a proportionate distribution of the proceeds of the sale of the shares. Otherwise, the residuary gift to him would have been futile, for if he purchased the total number of shares given to him by way of residuary gift, the absurd result would follow that the testator's intention to benefit him would have been defeated by Dagner's own act and the remaining legatees would have been enriched by the proceeds of his purchase at a fair market value. The will contains no indication of such a purpose.

I accordingly hold that the moneys paid by Dagner for the purchase of the stock became distributable in the respective portions fixed in the will among the three shares of the remainder. The testator directed that these proceeds should be invested in order to yield an income for the support of his widow, the life tenant. Subject to the ordinary rule of prudence and vigilance placed upon trustees, this fund was liable to the hazards of investment. The investments might increase or decrease in value during the period of the trust. Moreover, there was no clear requirement that these proceeds be kept separate. As they were invested and intermingled with other residuary funds, a method of computation must be found to establish their value in proportion to the general fund.

In respect of the liquidation of the company, a similar situation was contemplated by the testator. Such part of the liquidation as might be determined to be income was payable to the life tenant. The amount of principal represented by the liquidation became principal distributable to the remaindermen. Again, these proceeds were necessarily required to be invested and the remaindermen might gain or lose by the hazards of the investment. If there had been no purchase by Dagner and no liquidation, the problem would have been simple, for the shares of stock would have been distributable at the death of the wife in the specific division directed by the testator. The fact that a sale had taken place, and a partial liquidation of the corporation had occurred, does not interfere with the equitable distribution commanded by the maker of the will. In so far as a distribution of principal was involved, the gift of the shares of stock was specific in its nature. The income derived from them, or from the proceeds of the sale or liquidation, however, was payable to the life tenant. The changing form of the shares during the administration of the trust did not affect the substantial nature of the gift nor prevent the named remaindermen from receiving the stock, or the funds or property which represented a conversion of the shares of stock. (*Matter of Martin*, 252 N. Y. 582; *Matter of Mitchell*, 114 Misc. 370.) There is not even the

slightest indication in the instrument that Dagner should be preferred over the other named remaindermen and the gift to the trustees of the secondary trust of part of the stock.

The fractional distribution is to be based on the 889 shares — of which 250/889ths is to be apportioned to the estate of Dagner. That fraction is to apply:

(1) To the present value of investments or portions of investments representing the sum of approximately $60,000, which became part of the principal of the trust upon the purchase by Dagner of the 115 shares;

(2) To the liquidating dividends on the stock allocated to principal, as they may be modified by the gain or loss of the securities into which the cash derived from such dividends was invested, and

(3) To the remaining unretired shares of the stock.

Launcelot Stevenson is entitled to 13/889ths of the same property or fund, and the balance of 626/889ths passes to the remaining interests.

As this decision has disposed of all the questions of construction raised, an intermediate decree construing the will in accordance therewith may now be submitted. This decree may also provide for the appointment of a referee to hear and determine the remaining issues raised by the objections filed to the account.