In the Matter of the Estate of WILLIAM DUNIGAN, Deceased.

Surrogate's Court, Kings County, September 18, 1941.

*Gardiner Conroy* [*Joseph B. Cavallaro* of counsel], for the City Bank Farmers Trust Company and Charles J. Doyle, as executors, etc., petitioners.

*Brown, Overend & Vogel,* for William Dunigan, Jr., and others, respondents.

*James S. Brown,* special guardian for Genevieve Walsh and Laughlin Walsh, infant legatees.

WINGATE, S. The questions here presented relate to the right of the executors to receive commissions upon the value of 250 shares of stock of William Dunigan & Son, Inc., which was a corporation wholly owned by the decedent and the value which is to be assigned to the shares of this company.

The corporation was organized with 500 shares, all of which were owned by the decedent at the time of his death. Their aggregate worth, as appraised in the estate tax proceeding, was $60,244.06. Included in this figure was an indebtedness of the decedent to the corporation in the sum of $16,972.20.

The 250 shares involved in the first issue were given by the tenth item of the will in the following words:

" I give and bequeath two hundred and fifty (250) shares of the capital stock of William Dunigan & Son, Inc., * * * to my trustees, in trust, however, to pay the income thereof to the use of my mother, Mary L. Dunigan, during her life." By the thirteenth item the testator provided: " I authorize and empower my executors and trustees to continue any business or partnership in which I may be interested at the time of my death, or to settle, sell or discontinue the same at any time when and upon such terms and conditions as they, in their discretion, deem proper."

Pursuant to this authority, the executors sold the entire 500 shares of the corporation for $7,271.86 in cash, the cancellation of the noted indebtedness of the decedent, amounting to $16,972.20 and $36,000 in notes.

The solution of the first issue, as to whether the executors are entitled to any commissions whatsoever on the 250 shares given by the tenth item of the will, turns upon the question as to whether the gift there made was specific or general. Admittedly, if specific, no commissions are payable in respect thereof. (Surr. Ct. Act, § 285; *Schenck* v. *Dart,* 22 N. Y. 420, 424; *Matter of Whipple,* 81 App. Div. 589, 590; *Matter of Fisher,* 93 id. 186, 189; *Matter of Lester,* 172 id. 509, 521.)

The contention of the executors that the gift is general is primarily predicated on the supposed authority of *Tifft* v. *Porter* (8 N. Y.

516). The situation here presented is not, however, within its pronouncement. That decision was expressly limited and applies only to " legacies of stocks or shares in *public funds* " (*Tifft* v. *Porter, supra,* 518, italics supplied), which, " stated in the modern equivalent, is of securities in enterprises commonly purchased and sold by the general public in the open market." (Butler, N. Y. Surrogate Law & Practice, § 1997; *Matter of Freeman,* 139 Misc. 301, 302.) The securities here in question were not of this description, wherefore, the decision does not apply. As this court pointed out in *Matter of Freeman* (*supra,* 305), were a gift of closely held shares to be construed as general, a disposal thereof by the testator in his lifetime would require the executors to repurchase them or the business which they represent in order to make payment to the legatee, thus placing the estate at the absolute mercy of the individual who, at the moment, possessed control thereof. Such a determination would be a palpable absurdity and the entire tenor of authority is to the contrary. (*Matter of Security Trust Co.,* 221 N. Y. 213; *Matter of Mitchell,* 114 Misc. 370; *Matter of Strasenburgh,* 136 id. 91. See, also, *Matter of Tuck,* 171 id. 37; *Matter of Stoiber,* 103 id. 654.)

It being determined that the legacy in question is specific, the question remains as to whether the power of sale granted by the thirteenth item of the will and exercised by the executors materially altered the situation.

Since the gift was specific, the bequest operated as a conveyance to the donees as of the date of death of the testator (*Barber* v. *Terry,* 224 N. Y. 334, 339; *Matter of Utica Trust & Deposit Co.,* 148 App. Div. 525, 527, 528; *Matter of Voelker,* 176 Misc. 362, 365), wherefore title immediately vested in them. The authority accorded to the executors was a mere power which even though exercised by them did not result in divesting the title to the subject-matter of the bequest from the donees and transferring it to the executors. It merely accorded the latter the authority to change the form of the bequest which, in its altered form, was just as much the vested property of the trustees as the shares of stock at the moment of the testator's death. The effect of the power was, in substance, to constitute the executors agents of the trustees for the sale of the stock, and the purchase price of the shares given to the trustees, if and when received by the executors, was held by the executors merely as such agents on a naked trust for payment over.

This is not the variety of situation contemplated by section 285 as a basis for commission exactions and is obviously less indicative of creating any rights of that variety than one in which a specific

gift is expressly directed to be sold by the executors, which has uniformly been held not to vary the essential nature of the donation. (*Matter of Matthews*, 122 App. Div. 605, 607; *Matter of Smallman*, 138 Misc. 889, 903.)

It is accordingly the conclusion of the court that the gift under the tenth item of the will was specific and that the fiduciaries, in their capacities of executors, are entitled to no commissions on its value. They will, of course, be entitled to commissions thereon as trustees.

The remaining question relates to the right of the executors to commissions on the $16,972.20 which the testator " owed " to this wholly owned corporation and which was deducted in the computation of the purchase price payable by the purchaser and canceled as an obligation of the estate.

Since the testator was the unqualified owner of the corporation and no rights of its creditors or other third parties are involved, or, indeed, exist, this so-called " indebtedness " from him in his individual capacity, to himself in his corporate capacity, was, practically speaking, a wholly nugatory circumstance and substantially fictitious and a mere book entry. It is as if he, for business convenience, had added an additional pocket to his coat to which he initially transferred a portion of his money, later returning some of it to his usual wallet in another pocket. By reason of the absence of creditors or other stockholders, all assets of the corporation were as much subject to the individual disposition of the testator as any others which he possessed and their transfer to him in his individual capacity would not, so long as such conditions remained the same, create an obligation or debt on his part in any real sense, but merely, to continue the simile, a reduction in amount of the assets which he had initially segregated in his corporate pocket. This was precisely the method in which the executors and the purchaser of the stock treated the situation at the time of the sale. The " debt " was not paid. No money passed in its satisfaction. It was treated merely as a *pro tanto* reduction of the value of the segregated business — purely a paper transaction.

The entire tendency of the courts in recent years in connection with estate matters has been to view the actualities of the situation and not its fictional superficialities where preponderantly controlled or wholly owned corporations have been involved. In such situations the fact has been recognized that the corporate property was actually that of the testator so long as corporate creditors were not concerned. In furtherance of this conception, fiduciaries have been called upon to detail in their accounts the assets of such corporations and their acts in continuing their businesses (*Matter of Clere,*

260 App. Div. 984; *Matter of Goldberg*, 157 Misc. 49, 62; affd., 249 App. Div. 751; revd. on other grounds, 275 N. Y. 186; *Farmers' Loan & Trust Co.* v. *Pierson*, 130 Misc. 110, 116, 117, 119; *Matter of Gerbereux*, 148 id. 461, 466; *Matter of Steinberg*, 153 id. 339, 345; *Matter of Lesser*, 154 id. 364, 366; *Matter of Browning*, 172 id. 1088, 1090) and have been compelled to submit to preliminary examination in respect thereof. (*Matter of Markowitz*, 152 Misc. 1, 4; *Matter of Ebbets*, 153 id. 775, 776; *Matter of Morrell*, 154 id. 356, 358, 359; *Matter of Witkind*, 167 id. 885, 892; *Matter of Stewart*, Id. 361, 363; *Matter of Barrett*, 168 id. 937, 938; *Matter of Eddy*, 175 id. 193, 194.) Similarly, specific gifts have been validated and awarded to the donee despite the fact that title to the subject-matter stood not in the name of the testator, but in that of a corporation controlled by him. (*Matter of Burr*, 175 Misc. 725, 730; *Matter of Cartledge*, 118 id. 131; affd., 203 App. Div. 899; affd., 236 N. Y. 515; *Matter of Friedman*, 177 App. Div. 755; *Matter of Bush*, 124 Misc. 674; *Matter of Browning*, 172 id. 1088, 1090.)

In the present instance the so-called obligation of the decedent to his corporation was non-existent for all practical purposes and it would accordingly be improper to allow commissions on its amount by indulgence of the fiction that they have received and expended this sum.

Enter decree on notice in conformity herewith.