Pierson R. Hildreth, S.
In this intermediate accounting issues have been raised by objections some of which require a construction of certain provisions of the will.
Most of the value of the assets is represented by three items: (1) The real property which was testator’s home; (2) a controlling stockholder interest in a close corporation, Barrie Bros., Inc., which conducted an automobile agency, and (3) a complete and sole stockholder interest in another close corporation, J. C. Barrie Realty Inc., which held title to improved, income producing real property, and which in value, represented over one half of the estate.
Paragraph “second” of the will gave testator’s homestead property ‘ ‘ together with all furniture and furnishings therein contained, and together with all silverware and china and equipment of every kind and nature ” to his wife for her life, and upon her death to his daughter, Marion B. Zimmerman.
Paragraph “ third ” gave the stock he owned in the Barrie Bros., Inc., corporation to a grandson and daughter.
Paragraph ‘ ‘ fifth ’ ’ of the will gave all the stock in the real estate corporation to 15 named individuals and made an annuity in favor of his wife in the following language: “ fifth: I hereby give, devise and bequeath all my right, title and interest in and to the corporation, now formed, or to be formed, for the purpose of holding title to my East Main Street property, consisting of the barbie building and surrounding buildings and real property, in the following manner, to the persons listed herein, on the basis of two hundred and fifty (250) shares in all. These two hundred and fifty (250) shares should evidence the entire stock of the corporation which is known as j. c. barrie realty, inc. Subject, however, to the payment of Three Hundred Dollars ($300) monthly to my wife, anna h. barrie, for her lifetime, payable from the rental income of the said corporation *892 or property. Shares of Stock, in trust, shall be held until the infant reaches the age of twenty-one years ” and then followed three columns entitled, “ shares,” “ trustee ”, “ beneficiary ” under which were indicated the shares given to each of the persons named.
Paragraph ‘ ‘ sixth ’ ’ gave the residue of the estate to testator’s wife and three children.
Paragraph ‘ ‘ eighth ’ ’ provided as follows: ‘ ‘ eighth : It is also my desire and I hereby direct that, during the lifetime of my said wife, anna h. barbie, that expenses of the dwelling house at No. 287 South Ocean Avenue, Patchogue, New York, namely, fuel oil, taxes and expenses of gardener, shall be paid by said corporation, j. c. barbie realty, inc. These payments, together with the Three Hundred Dollars ($300) paid to my wife, anna h. barbie, monthly under paragraph ‘ fifth ’ hereof shall be a first charge against the rental income of the corporation, after the usual payment of taxes, insurance premiums, repairs, etc. The stock of said corporation is given to the persons named in paragraph ‘ fifth ’: hereof with these payments as a charge and duty.”
A grandson, John H. Barrie, Jr., and a daughter, Marion B. Zimmerman, were named executors.
This accounting is rendered by the executor-grandson. The daughter-executor has not joined; she has filed objections both in her capacity as a coexecutor as well as an individual legatee, in which objections Richard Barrie, a residuary legatee, has joined. Objections are also filed by one ICruteck, an accountant, claiming as an estate creditor for accounting services rendered to the coexecutor and others interested in the estate. The special guardian requests the instructions of the court upon certain matters hereafter considered.
The court notes that some of "the problems in this estate have arisen because of a lack of cooperation between the two executors. Each must realize that each is fully responsible as a fiduciary for the affairs of the estate, and accountable for its proper settlement.
The objections of Marion B. Zimmerman and Richard Barrie numbered 1, 2, 3 and 4 pertain to items in the account. It was stated at the hearing that such items had been explained to their satisfaction, and it was stipulated that they be withdrawn.
Objection 5 relates to the claim of Kruteck, an accountánt, in the amount of $2,894.92. The proof shows clearly that the services were rendered to the coexecutor in her individual capacity, in her representative capacity, and to Richard Barrie, individually. The parties were unable to agree as to the portion of *893 claimant’s total bill which might be properly allowed the coexecutor as an administration expense upon the estate, and requested the court to determine the amount based on the evidence presented. The court is not authorized to fix the fee itself (Matter of Kottle, 13 Misc 2d 970), but the representative may be allowed for reasonable necessary administration expenses paid (Surrogate’s Ct. Act, § 222). The court finds that the co executor was justified, under the circumstances, to engage separate accounting services for which she may be allowed a reasonable sum as a necessary administration expense. This allowance, however, is only for such services as were rendered to her in her representative capacity, and is not for services rendered to the individuals. Some phases of the work appear to have been merely clerical, and should have been done by the coexecutor as part of her duty as an executor. Such are not a proper administration expense. (Matter of Musil, 168 Misc. 529.)
The services rendered by the accountant engaged by the . accounting executor, including matters in preparation of the account and the New York and Federal tax proceedings were performed for $700. Considering all factors, the coexecutor will be allowed the sum of $500 as an estate expense on account of the claim. Except to the extent indicated, the claim is disallowed. This is without prejudice to the right of claimant to seek payment from the individual parties for whatever services were rendered to them.
Objections 6 and 7 relate to allowances to counsel for legal services rendered to the accounting executor and to the co executor. This will be reserved until settlement of decree. Each counsel shall submit affidavits showing services rendered to the executors in their respective representative capacity only. The matter of allowance for services rendered to any parties in their individual capacities is not before the court in this proceeding.
A question is raised as to the disposition of a legacy of 10 shares of the real estate corporation given to a person who was a necessary witness to the will. The legatee renounced the bequest. However, such legacy is void by the provisions of the Decedent Estate Law (§ 27). Accordingly, it is determined that being void the legacy falls into the residue, and shall be disposed of as provided by the will as part of the residuary estate. (Riker v. Cornwell, 113 N. Y. 115; Albany Hosp. v. Albany Guardian Soc., 214 N. Y. 435.)
A question is raised as to construction of the provisions of the will which charge the specified carrying charges on the home *894 stead property and the annuity of $300 per month on the “ rental income ” of the real estate corporation of its stock or its property. The provisions of the will are not clearly phrased in this respect. But considering the will as a whole, it seems clear that one of testator’s primary purposes was to benefit his wife, and to make certain that the carrying charges and the annuity would be paid from that part of the estate represented by the real estate owned by the corporation. The corporation was formed shortly before the will for the express purpose of holding title to the real property which decedent held in Ms own name. The will refers to the corporation as ‘1 now formed or to be formed for the purpose of holding title to my East Main Street property ’ ’. It directs that the annuity be ‘1 payable from the rental income of said corporation or property ’ ’. In another paragraph the will provides, referring to both the carrying charges and the annuity, that they “ shall be a first charge against the rental income of the corporation after the usual payment of taxes, insurance premiums, repairs, etc. ’ ’
It does not seem to the court that testator intended to require the 15 legatee stockholders, many of whom were infants, to assume separate obligations to his widow by accepting the shares of stock bequeathed to them. The wife was to have a practical, effective and enforcible charge on the revenue producing asset. This was the real property itself. Title was placed in the corporate name solely for the convenience of holding title. If the real property stood in testator’s name the directions charging payment of the bequests to his widow upon the income would create an enforcible lien upon the land itself. (Matter of Ambrosio, 10 Misc 2d 638; Matter of Vigliotti, 198 Misc. 281; Matter of Jeromos, 9 Misc 2d 294.)
Here the corporate form is but a fiction between the testator as sole stockholder of the corporation and the land itself. To all intents and purposes testator owned the real estate individually. The bequests to the wife charged on the rental income should be made effective in the same manner as would have resulted had title to the real property been in testator’s name alone. Accordingly, so far as the bequests to the wife are concerned in this ease, the corporate form is to be disregarded. The specified carrying charges on the homestead property and the payment of the annuity given to testator’s wife are deemed to create a charge and lien upon the real property itself held in the name of J. 0. Barrie Realty, Inc., of which corporation testator was the sole stockholder. (Matter of Dunigan, 177 Misc. 212; Matter of Bauer, 289 N. Y. 326; Matter of Browning, 172 Misc. 1088.) The land is subjected to such charge subject *895 to the payment of real estate taxes, insurance premiums, repairs as directed in paragraph 1 ‘ eighth ’ ’ of the will, and to the usual rights of creditors, and to the powers of the executors to use estate assets to pay estate obligations.
The amount of estate taxes when finally determined will require apportionment as there was no direction against apportionment in the will. It was agreed that this be reserved for determination at a later date upon submission of proposed computations and method.
To the extent that commissions are sought by the .executors on this accounting, determination is reserved until settlement of decree and submission of computations. Except for the portion passing under the residuary clause, the estate appears to have been disposed of by specific bequest and devise. Computations will show whether a single commission on the gross estate less the specific bequests and devises is to be allowed. (See Matter of Kirby, 102 N. Y. S. 2d 962; Matter of Story, 121 Misc. 772.)
The petition requests that letters of trusteeship issue to the persons named in the will as trustees for the infant legatees of shares of the real estate corporation. The will at most merely states that the shares ‘ ‘ in trust, shall be held until the infant reaches the age of twenty-one years.” Nothing whatever is said as to what the trustee is to do, what the duties or powers are to be. The provisions are too vague and indefinite to create a trust. (Jacoby v. Jacoby, 188 N. Y. 124; Matter of De Rycke, 99 App. Div. 596; Matter of Benjamin, 139 N. Y. S. 2d 16.) The legacies will accordingly vest directly in the beneficiaries and such as may be to infants at time of distribution will be payable as provided by section 271 of the Surrogate’s Court Act.
Unless the parties agree on the matter, a supplemental account is to be filed showing property, if any, set off to the widow under the Surrogate’s Court Act (§ 200) and the specific items in the homestead of which the widow is given life use.