FRANK C. P. EMERY and wife

*vs.*

SAMUEL BATCHELDER and another, executors.

York. Opinion April 28, 1886.

*Wills. Deficiency of assets. Annuities. Legacies. Trustees.*

When the possibility of a failure of sufficient assets to meet the legacies named by a testator in his will has not been anticipated and specifically provided for by him, the presumption of intended equality prevails between general legatees, as well as equality in respect to the share to be borne in all deficiencies of assets.

In the administration of testamentary assets where there is a deficiency of such assets after the payment of debts, expenses and specific legacies, the loss is to be borne *pro rata* by those pecuniary legacies which are in their nature general.

Annuities stand upon the same footing as legacies.

Between annuitants and legatees there is no priority merely because one is an annuitant and the other a legatee where the estate is deficient, but both must abate proportionally.

In the investment of trust funds, trustees are to conduct themselves faithfully and in the exercise of a sound discretion, not with a view to speculation, but rather to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested.

On report of facts agreed.

The case and material facts are stated in the opinion.

*Bourne and Son*, for the plaintiffs.

This action is not only authorized by the statute (R. S., c. 65, § 31,) but is in accordance with the decisions in Massachusetts and in our own state. *Farwell* v. *Jacobs*, 4 Mass. 635.

If the will shows an intention on the part of the testator to give a legatee a preference, that legacy is exempt from abatement in case of deficiency. Roper, Legacies, 115.

In the construction of wills the intention of the testator governs. *Sawyer* v. *Baldwin*, 20 Pick. 384; *Treadwell* v. *Cordis*, 5 Gray, 355; *Hall* v. *Cushing*, 9 Pick. 407; *Cowdin* v. *Perry*, 11 Pick. 510.

Counsel contended that the intent of the testator in the case at bar clearly indicated that the plaintiffs' annunity was preferred. In four other instances the testator created a trust in the usual form, " I give and bequeath unto . . $ . . . to keep the same safely invested and apply the income." But in this provision for his sister's only child he expressed his intention in language that cannot be misunderstood. She was to have an annual income of four hundred dollars, payable quarterly.

In *Raphael* v. *Boehm*, 11 Ves. 92, the executor having failed to accumulate the interest by investment, according to the directions of the will, was charged personally with interest. See also, *Dornford* v. *Dornford*, 12 Ves. 127; *Forbes* v. *Ross*, 2 Bro. Ch. 430; *Prescott* v. *Pitts*, 9 Mass. 376.

In *Miller* v. *Congdon*, 14 Gray, 116, the court say : "It has been settled by a series of decisions that where an executor by express terms of the will, or by necessary implication is made a trustee of any part of the estate of the testator, with the obligation to invest and pay out the income thereof, it is his province and duty to separate the same from the mass of the testator's property, and invest it safely in some safe and productive stock, or at interest on good security." See *Vanorden* v. *Vanorden*, 10 Johns. 31; *Irvin* v. *Ironmonger*, 2 Russel and Mylnes, 531; Roper, Legacies, 411; *Lovell* v. *Briggs*, 2 N. H. 219.

*Strout and Holmes*, for the defendants, cited : *University of Penn. App.* 97 Pa. St. 187; 2 Redfield, Wills, 550–554; *Towle* v. *Swasey*, 106 Mass. 100; *Miller* v. *Huddlestone*, 3 Macn. and Gord. 513; *Thwaites* v. *Foreman*, 1 Collyer's Ch. 409; *Titus* v. *Titus*, 26 N. J. Eq. 111; 2 Wms. Ex'rs, 1165, 1169, 1171, 1172, 1173, 1174; *Hubbard* v. *Hubbard*, 6 Met. 50; *Pollard* v. *Pollard* 1 Allen, 490; *McLearn* v. *Robertson*, 126 Mass. 537; *Wood* v. *Vandenburg*, 6 Paige, 277; *Richardson* v. *Hall*, 124 Mass. 228; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Farnum* v. *Bascom*, 122 Mass. 282; *Everett* v. *Carr*, 59 Maine, 325; *Shepherd* v. *Guernsey*, 9 Paige, 357; *Swasey* v. *Am. Bible Soc.* 57 Maine, 523; *Walker* v. *Hill*, 17 Mass. 380; *Wright* v. *Callender*, 2 DeG. M. & G. 652; *Croly* v. *Weld*, 3 DeG. M. & G. 993; *Brown* v. *Brown*, 1 Keen, 275; *Birch* v. *Sherratt*, 2 Chanc. App. 644; *Coore* v. *Todd*, 7 DeG. M. & G. 520; *Bancroft* v. *Bancroft*, 104 Mass. 226.

FOSTER, J. Although the present action is for the recovery of a legacy given in the form of an annuity, the questions arising in the case depend upon the construction of the twenty-second clause in the will of Daniel Austin, late of Kittery, deceased. By that clause he provides as follows : "I direct my executors hereinafter named, to reserve from my estate, and to keep securely invested, such a sum of money as will be sufficient to produce a net annual income of four hundred dollars, and to pay the said income in equal quarterly payments of one hundred dollars each, to Mrs. Mary Emery, wife of F. C. P. Emery of

Neponset, to her sole and separate receipt during her natural life; the first payment to be made three months from the date of my decease; the said principal sum at the death of the said Mary, to revert to and form a portion of my residuary estate."

The other provisions in the will become important only so far as they may serve to throw light upon the questions raised in relation to the intention of the testator under the foregoing clause, and the nature and amount of the legacies given by the will.

From these provisions it appears that the whole amount of the legacies was forty-one thousand eight hundred dollars, exclusive of this annuity and residuary legacies. The defendants, as it appears, have settled two accounts, showing a balance at that time for distribution of forty-five thousand four hundred and twenty-six dollars and twelve cents. They also, in the execution of their trust, and supposing the estate to be sufficient to pay all the legacies and this annuity in full, paid to the annuitant six consecutive quarterly payments of one hundred dollars each, under the clause in question, beginning three months after the death of the testator, the last one being on the fourth day of June, 1879. It was then found that the estate as invested was insufficient to set aside enough to meet this annuity in full and pay all the legacies named in the will. Accordingly the defendants, estimating the proportion of all the general legacies which the estate would meet at eighty per cent, have, since the fourth day of June, 1879, paid the annuitant eighty dollars quarterly, subjecting the annuity and the legacies to the same proportional abatement.

The principal controversy, therefore, is whether this annuitant should suffer *pro rata* with the other general legatees in the will or is entitled to priority over them and to payment of the annuity in full.

The answer to this proposition will be found when we come to examine the language used by the testator in the clause under consideration, the nature of the legacy therein named, and ascertain the intention of the testator as collected from the whole will; for his intention must be gathered, not from any

particular clause alone, but from all the provisions of the will. And here we may say that the language used is such that there can be no question but that this legacy is general and not specific. It is for a certain amount to be paid from the general fund of the estate. It is not specific, because not of any particular thing or from any particular money of the testator's estate. Therefore the general rule is, that in the administration of testamentary assets, when there is a deficiency of such assets after the payment of debts, expenses and specific legacies, the loss is to be borne *pro rata* by those pecuniary legacies which are in their nature general. *Towle* v. *Swasey*, 106 Mass. 104 ; *McLean* v. *Robertson*, 126 Mass. 538 ; *Swasey* v. *American Bible Society*, 57 Maine, 524.

And it is the settled doctrine that annuities stand upon the same footing as legacies, and as between annuitants and legatees there is no priority, merely because one is an annuitant and the other a legatee, where the estate is deficient, but both must abate in the same proportion. 2 Wms. Exrs. *1367 ; *Croly* v. *Weld*, 3 DeG. M. & G. 996 ; *Wroughton* v. *Colquhoun*, 1 DeG. & Sm. 357.

Of course the rule in reference to proportional abatement applies only in case the possibility of a failure of sufficient assets to meet the legacies named in the will has not been anticipated and provided for specifically by the testator. Whenever it can be shown that such possibility of deficiency of assets has been specifically provided for, then his directions will govern, and the loss must be borne by those upon whom he has seen fit to place it. Therefore if by express words, or by a fair construction, the intent of the testator is clearly manifest that one general legatee should have priority over the others, that intention must be carried out. But the burden lies upon the party seeking priority to establish it, and show that such was the intention of the testator, for the reason that in the absence of proof of such priority the testator is presumed to have considered his estate sufficient to pay all legacies, and therefore not to have thought it necessary to provide for a deficiency by giving preference to any of those upon whom he has bestowed his bounty. *Miller*

v. *Huddlestone*, 3 Macn. and Gord. 513. Consequently no priority will be allowed where the expressions are ambiguous and do not mark with certainty the testator's intention. *Swasey* v. *American Bible Society*, 57 Maine, 528; *Titus* v. *Titus*, 26 N. J. Eq. 111; *Thwaites* v. *Foreman*, 1 Collyer, 409. The language used by the testator in the will is the basis of inquiry as to his intention; but such extrinsic circumstances as aid in the interpretation of that language and assist in arriving at the intention may properly be considered.

In the light of these principles, when applied to the language used by the testator in the case before us, we fail to find anything, either in the particular clause, or in any part of the will, or in the circumstances surrounding the case, which indicates any intention on the part of the testator that his annuity should have any preference over the other legacies. There is nothing to indicate that it was not his intention that all his legacies should be paid — certainly nothing which indicates that one should be paid at the expense of the others.

The fact so strenuously urged upon our attention by the learned counsel for the plaintiff, that the testator directed the first installment to be paid at the end of three months from his death, does not indicate sufficiently that intention which is necessary to give priority to this annuity. *Swasey* v. *American Bible Society*, *supra*; *Everett* v. *Carr*, 59 Maine, 330. Thus it has been held that it is not sufficient for such purpose that the testator gave a direction, as to a general legacy to his wife, that it should be paid *immediately* after his death, out of the *first* moneys that should be received by the executors. *Blower* v. *Morret*, 2 Ves. Sen. 420. And the same principle applies whether the annuity is to commence immediately on the death of the testator, or at some future period. 2 Wms. Exrs. *1367. Nor will the meritorious character of the legatee, nor the fact of near relationship, be sufficient, when from the will itself there is no proof of an intention to prefer, although these facts, as stated by the Lord Chancellor, in *Miller* v. *Huddlestone*, *supra*, may constitute " an auxiliary reason for allowing such priority where the words used will favor the notion of a priority to a sufficient

degree." And in this last case it was held that life annuities to a daughter and to other relatives were not entitled to priority over other legacies, the language of the will furnishing no proof of such intention.

There are cases, however, where a pecuniary legacy would undoubtedly be exempt from abatement, as where it is founded on a valuable consideration, such as the relinquishment of a right of dower by the widow of the testator. *Towle* v. *Swasey*, *supra*. In such case the party takes not as a mere volunteer or beneficiary, but as a purchaser; for it is presumed that the testator intended to satisfy first the legal claims on his estate.

But in the case at bar it nowhere appears, and it cannot be claimed, that the annuitant, whose relationship is only that of niece to the testator, has any legal claim upon his estate other than as one of the general beneficiaries under his will. Had it been his intention that she should be preferred to the other legatees of the same class, it would have been very easy for him to have expressed such intention in unmistakable language. We must judge of his intention by what he has written rather than by what he might have written. There are a large number of general pecuniary legacies contained in the will, and, from anything that appears, any one of them is equally meritorious with that of the plaintiff.

Neither does the fact that the executors are directed to reserve from the estate, and keep securely invested, such a sum as will produce this annuity of four hundred dollars annually to the plaintiff, weigh sufficiently upon the question of intention to give preference or priority over the other general legacies. The executors owe the same duty and fidelity, in the administration of their trust, to the other general legatees as to this plaintiff. Most annuities of this kind have their origin from some specific directions on the part of the testator. Such directions may properly relate to the existence rather than the priority of the annuity.

It may be admitted as a well settled general principle, as claimed by the plaintiffs' counsel, that an executor is bound by directions in the will to invest money on interest, to pay the

income as directed, and generally to conform to the directions given in the will. Yet, when there is found to be a deficiency of assets, and no specific provision is made for such a contingency, it will be seen that it becomes necessary to apply a somewhat different rule of law; for every clause and provision in a will should be carried into effect if it can be done consistently with the rules of law, and the intention of the testator. And the decisions to which our attention has been called, where executors have been held strictly by the directions given in the will, are those where the estate has been amply sufficient to meet the different legacies mentioned. They cannot, therefore, be applied as the inflexible rule of action in cases where there is a deficiency of assets.

The evident intention of the testator here was, that his estate was amply sufficient to pay all the legacies. And when we examine the will and find that the possibility of a failure of sufficient assets to meet these legacies has not been specifically anticipated or provided for by the testator, we must be guided in our decision by the well settled rules of law,— that the presumption of intended equality prevails between general legatees, as a class, as well as equality in respect to the share to be borne in all deficiencies of assets. Consequently the plaintiff must share the same proportional loss with the other objects of the same bounty.

The remaining questions submitted by the report, and which it becomes our duty to pass upon, may be briefly considered.

The act of the executors in the purchase of nine thousand two hundred dollars in United States four per cent bonds for the purpose of being set aside under the twenty-second clause of the will, has been made the subject of severe criticism by the counsel for the plaintiff in his very able argument. But taking into account not only their security but also their exemption from taxation, and the comparatively small amount of trouble and expense in taking care of them, we do not feel justified in saying that the executors have acted in any way injudiciously in the investment which they have seen fit to make. The objection is not that the investment is not a safe one, but that, with the

high rate of premium which these bonds command in the market as compared with the rate of interest which they pay, some other more profitable investment might have been made.

It appears from the account of the executors that these bonds were purchased at a premium of less than three per cent. True, they have appreciated in value ; but investments carefully and judiciously made, are not, as a rule, to be disturbed. As was said by the court in *Harvard College* v. *Amory*, 9 Pick. 461 : "All that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital to be invested."

The very recent case of *New England Trust Co.* v. *Eaton*, 140 Mass. 532, reaffirms the doctrine of the foregoing case, holding that "the investment of trust property should be made with a view of permanency and not in a spirit of speculation."

Finally : It is the duty of the executors to ascertain the gross amount of all the general legacies to be paid under the will, after the payment of debts, expenses, and specific legacies ; and if it be found that the estate as invested is insufficient to pay the general legacies, and to set aside enough to pay this annuity in full, then they should ascertain what proportion of the general legacies and of this annuity the estate to be divided will pay, subjecting the general legacies, and the annuity (since June 4, 1879) to the same abatement *pro rata*.

Inasmuch as from the statement or figures before us it is impossible to ascertain the exact standing of the estate at the commencement of this action, and as a computation becomes necessary for the purpose of entering the actual judgment, upon the pleadings, in accordance with this opinion, the case is remanded for the amount of the judgment to be entered at *nisi prius* for whatever sum may be found due the plaintiff at the time this action was commenced, together with interest thereon

to the time of judgment : If nothing is found due the plaintiff, then judgment should be entered for the defendant.

PETERS, C. J., WALTON, VIRGIN and LIBBEY, JJ., concurred.

HASKELL, J., did not sit.