[Civ. No. 2147. Fourth Appellate District.—April 8, 1938.]

In the Matter of the Estate of NORMAN R. GREENWALD, Deceased. THE FIRST NATIONAL BANK IN SANTA ANA, as Executor, etc., Respondent, v. HAROLD H. GREENWALD et al., Appellants.

Rutan, Mize & Kroese, Robert C. Mize and Harold H. Coyle for Appellants.

Newlin & Ashburn, Paul Sandmeyer, L. A. West, Owen C. Emery and Adrian Marks for Respondent.

BARNARD, P. J.—This is an appeal from a decree instructing the executor that, in the event the estate is not sufficient to pay all legacies in full, any amounts available for distribution should be distributed *pro rata* among the legatees without regard to whether they were kindred of the testator or not.

Norman R. Greenwald died on December 11, 1930. In his will, dated December 3, 1930, he left money legacies aggregating $245,000, of which $70,000 was bequeathed to ten of his kindred in varying amounts, and a total of $175,000 to thirteen persons who were not related to him. Any residue was given to a religious corporation. In March, 1937, a petition was filed by the executor, pursuant to section 588 of the Probate Code, alleging that the amount of the estate is insufficient to pay all of the bequests in full, setting forth certain provisions of the will relative to dividing the proceeds of any sale of property proportionately between the beneficiaries named in the will other than the residuary legatee and relative to having the remaining property of the estate appraised and distributing undivided interests therein, alleging that a dispute had arisen between the legatees named in the will who are relatives of the decedent and those legatees who are not such relatives as to whether or not the will discloses an intention that all legatees should share in losses occasioned by the insufficiency of the estate to pay all bequests in full, and praying that it be instructed as to the meaning of the will in these respects. An answer was filed by those legatees who were relatives of the decedent, in which they set up the claim that they were entitled to a preference and that in the event the estate is insufficient to pay all legacies in full they are each entitled to payment in full before anything is paid to legatees who are not related to the testator. The court found that the net value of the estate would probably not exceed $125,000 and that the will expresses an intention that legacies to kindred and legacies to persons not related to the testator shall be paid *pro rata* in the event the estate is not sufficient to pay all in full. A corresponding decree was entered from which the legatees who are related to the testator have taken this appeal.

The appellants argue that the law of this state, as it existed in December, 1930, gave a preference to kindred over strangers in the payment of legacies when the estate was insufficient to pay all legacies in full unless a different intention was expressed in the will, and that this testator failed to express a different intention. Incidentally it is argued that the adoption of the Probate Code in 1931 made no change in the law in this respect, although it is conceded

that the law in force when the testator died is controlling here.

As pointed out in *Estate of Wever*, 12 Cal. App. (2d) 237 [55 Pac. (2d) 279], a radical change in the statutes which are material here was brought about by the adoption of sections 750, 751 and 752 of the Probate Code. The corresponding previous sections of the Civil Code were interpreted in *Estate of Apple*, 66 Cal. 432 [6 Pac. 7], as giving no such preference to relatives in the payment of legacies, where an abatement was necessary, unless an intention to that effect appeared in the will. Whether or not the portion of the opinion in that case which sets forth that interpretation of these statutes should be classed as *obiter dictum*, as contended by appellants, the reasoning there used is, to say the least, extremely suggestive as to what should be held to be the law under the former statutes.

However, it is unnecessary to give further consideration to this question since we think that the trial court was justified in finding, as it did, that this will sufficiently discloses an intention that legacies to kindred and legacies to persons not related to the testator should be treated alike, with no preference in favor of the kindred, in the event the estate should not be sufficient to pay all these general legacies in full.

The will, after providing for the legacies which have been referred to, and with two omissions which are noted but which are not material here, reads as follows:

"XIX

"I furthermore direct that none of the beneficiaries above named shall demand the distribution to them of any bequest to which they would be entitled for five years after my death. My Executor shall not be required to sell any portion of my estate within five years of my death unless my Executor, in his uncontrolled discretion, should believe it to be for the best interests of my estate to make such a sale. In the event of the sale of any property by my Executor the proceeds of such sale shall be divided proportionately between the beneficiaries above named, exclusive of the residuary legatee, until such time as such beneficiaries have received their full bequests.

"I furthermore provide that my Executor shall have the power to sell any of my property at public or private sale

and without order or notice of sale but to be confirmed by the court. . . .

"If, upon the expiration of five years from my death, my Executor has not sold sufficient property to pay the bequests herein provided for, exclusive of the residuary bequests, my Executor shall have the option and sole discretion of completing the bequests in conformity with the following plan instead of paying such bequests in cash, that is to say, the Executor may appraise or have the property of the estate appraised by three persons, . . .

"After such appraisement the Executor may allot undivided interests in and to such property, there being as many undivided interests as there are thousands of dollars of appraised value, plus as many thousands of dollars as have been paid to the beneficiaries herein named. The Executor may then complete the payment of the bequests by distributing to each of the beneficiaries as many undivided interests, or fractions thereof, as remain unpaid in thousands of dollars, or fractions thereof, on each bequest, distributing to the residuary legatee the remaining undivided interests. Should my Executor elect to complete the distribution of my estate in the manner provided for in this subdivision instead of through a sale of the property, he shall have one year's additional time in which to do so, and during such year he shall not be personally responsible for interest, nor shall any beneficiary have the right to demand his or her bequest, or any portion thereof.

"XX

"I have, except as otherwise in this Will specified, intentionally and with full knowledge omitted to provide for my heirs living at the time of my demise.

"XXI

"If any devisee, legatee or beneficiary hereunder contest this Will, or any part or provision thereof, any share given to such devisee, legatee or beneficiary is hereby revoked and shall become void.

"XXII

"I direct that every gift, devise, bequest and interest given under this Will, or any codicil thereto, shall be delivered free from all estate and inheritance taxes, and that such taxes be paid, first, out of any property undisposed of by this Will; or, second, out of the residue of my estate.

## "XXIII

"In the event that any provision or provisions of this Will are or are adjudged to be for any reason unenforceable, I direct, that, disregarding such provisions, the remainder hereof shall subsist and be carried into effect."

The testator gave two and one-half times as much to his friends as to his relatives. With respect to both relatives and friends he provided that the bequests should not fail but should go to the legatee's spouse in the event of the legatee's prior death. In paragraph XX he states that he has intentionally omitted to make any provision for his heirs other than that specifically mentioned in the will. This is some indication that he did not intend to give them any preference which might otherwise arise from law. In paragraph XXI he refers to a share given to any legatee or beneficiary who should contest the will. The use of the word "share" in this connection is some indication, slight though it may be, that the various legacies were to be considered, as to their respective amounts, as shares in the estate. In paragraph XXII, relating to estate and inheritance taxes, he provided that both relatives and friends should be treated alike. In paragraph XIX he gave the executor a general power to sell any property of the estate and provided that none of the legatees should have the right to compel such a sale within five years after his death, although the executor might in his discretion sell any or all of the estate during that time. It is provided, however, that if and when any of the property is sold the proceeds shall be divided proportionately between all of the legatees, exclusive of the residuary legatee, until such time as they have all been paid in full. It may first be observed that the latter provision would be largely unnecessary if the assets were sufficient to pay all legacies in full since on partial distribution the law provides that such distribution shall be ratable. The executor had the power to sell all of the property and if he disposed of it all in successive sales he was directed to distribute the proceeds among all of the legatees until they were paid in full, and this part of the will could not be carried out unless it was the intention of the testator to have such proceeds distributed proportionately as they came in, without regard to whether or not there eventually proved to be enough to pay all of the legacies in full. The fact

that the residuary legatee was particularly excluded from sharing in such distribution until all legacies had been paid in full is a further indication that the testator contemplated that the residuary legatee might not receive anything. In the meantime all the legatees were to be treated alike. Having given the executor the power to sell all of the property, at his discretion, and not knowing how much would be sold at any particular time or what the same would bring, it is inconceivable that the testator intended that payments from the proceeds should be made proportionately to all legatees and that subsequently those not related to him should be required to pay these amounts back in order that they should again be distributed among those legatees who were related to him.

The will was executed in 1930, after the great depression had started and when as a matter of common knowledge values were going down, and the rather elaborate provisions giving the executor power to sell the property of the estate, that he should not be required to sell for at least five years and that he might, after the expiration of five years, distribute interests in the estate in lieu of paying the bequests in cash, rather strongly indicate that the testator had in mind the general economic condition and that he contemplated that the estate might not be sufficient to pay all legacies in full. While the provisions for the optional appraisement of what remained of the estate after the expiration of five years and the allotting of undivided interests in such remaining property, contained in the latter part of paragraph XIX, are rather vague and not entirely satisfactory, it does clearly appear that any such allotment is to be made proportionately among all of the legatees without respect to their relationship to the testator and that any distribution to the legatees is to be made in proportion to the amount of their legacies.

We think the final provision of the will, contained in paragraph XXIII, further indicates an intention that neither any existing fact nor rule of law should interfere more than necessary with the bequests actually made, and strongly confirms the prior indications contained in the will that the testator intended to treat all general legatees alike. It is therein provided that in the event any of the provisions of the will are, or are adjudged to be, unenforceable, for any reason, the remainder shall be carried into effect. The main

provisions of the will are those providing for the various legacies, both to kindred and friends. In effect the testator directed that if for any reason these provisions could not be carried out in their entirety they should be carried out in so far as possible. The only reason they cannot be carried out in full is because of a factual condition, the insufficiency of assets, but they can be carried out to the extent that funds are available.

In our opinion, it sufficiently appears from the language of the will that the testator intended that all these legatees, without regard to kinship, should share proportionately in any assets available for distribution, and the court was justified in making the finding complained of. In view of the conclusion we have reached on the main question involved it is unnecessary to consider a further point raised by the appellants.

The decree appealed from is affirmed.

Jennings, J., concurred.

Justice Marks, being disqualified, took no part in the decision of this case.