[Sac. No. 5790.   In Bank.   Aug. 10, 1948.]

Estate of FRANK H. BUCK, Deceased. LEONARD W. BUCK, as Executor, etc., et al., Respondents, v. HELEN S. PETERSON, Appellant.

Ira B. Langdon, George E. Frioux and M. Mitchell Bourquin for Appellant.

Andrew F. Burke, Francis C. McInnis and Hardin, Rankin, Meltzer & Fletcher for Respondents.

GIBSON, C. J.—The executor of the will of Frank H. Buck, being in doubt as to whether there had been a partial ademption of certain legacies, petitioned for instructions under section 588 of the Probate Code. The will bequeathed 30,000 shares of the Belridge Oil Company stock to the testator's six children, 5,000 shares of the same stock and $30,000 in cash to Helen S. Peterson, certain cash and property to others, and the residue to his wife. When the will was executed Mr. Buck owned 40,000 shares of the stock, but he later transferred 10,000 of them to his wife and had only 30,000 shares when he died. The court determined that the bequests of

stock were specific and made an order instructing the executor that the ademption of 5,000 shares was to be borne *in toto* by Miss Peterson, who was not related to the testator. She has appealed from that order.

The provisions of the will in question are as follows:

"SIXTH: My children have all been provided for amply under the will of my mother, Annie S. Buck. Nevertheless, as a final and personal bequest, I give and bequeath to each of them Five Thousand (5,000) shares of the capital stock of the Belridge Oil Company, which shares are now represented in my estate by trustees' certificates. . . .

"EIGHTH: I give and bequeath to Helen S. Peterson, residing at the time of the execution of this will at Garden Towers, 15th Street, N. W., Washington, D. C., Five Thousand (5,000) shares of the capital stock of Belridge Oil Company, which shares are now represented by trustees' certificates, and in addition thereto, the sum of Thirty Thousand Dollars ($30,000.00) in cash."

The correctness of the trial court's order depends first upon whether the bequests of stock were general or specific. The question is whether the testator intended to give a specific thing and that alone, or to give a bequest which, in any event, should be paid out of his general estate. In determining whether a bequest is specific or general, the fundamental and controlling factor is the intent of the testator at the time the will was drafted. (*Estate of Jepson,* 181 Cal. 745, 747 [186 P. 352]; *Estate of Jones,* 60 Cal.App.2d 795, 798 [141 P.2d 764]; *Estate of Cline,* 67 Cal.App.2d 800, 804 [155 P.2d 390].)

Applying these rules to bequests of stocks, bonds and other securities, it has been held that a gift of a certain number of securities described by the name of the corporation, or by value or quantity, but not indicating any particular lot of such securities, will be construed as a general bequest if there is nothing on the face of the will or in evidence of the surrounding circumstances, where admissible, to indicate that the testator intended a gift only of the securities owned by him. (*Estate of Jones,* 60 Cal.App.2d 795 [141 P.2d 764]; *Tifft* v. *Porter,* 8 N.Y. 516; 4 Page on Wills (Lifetime ed.) [1941], § 1397, p. 122; see 6 A.L.R. 1353, 1377; 73 A.L.R. 1250, 1255.) It has been held, however, that where there are bequests of shares of a closely held corporation the nonpublic character of the shares bequeathed is evidence of an intent to make a specific gift. (*In re Security Trust Co.,* 221 N.Y. 213 [116

N.E. 1006]; *In re Kingsley's Will*, 67 N.Y.S.2d 464; *In re Dunigan's Will*, 177 Misc. 212 [30 N.Y.S.2d 38]; *In re Strasenburgh's Will*, 136 Misc. 91 [242 N.Y.S. 453]; see *In re Freeman's Will*, 139 Misc. 301 [248 N.Y.S. 422].)

■ There is nothing in the will which shows the type of corporation or the manner in which its shares were held, and extrinsic evidence was admissible to establish these relevant facts. At the time of the execution of his will, on December 7, 1940, decedent was the owner of 40,000 shares of the Belridge Oil Company stock which were covered by a voting trust agreement and were represented by trustees' certificates. Of the 1,000,000 shares issued by the company, approximately 61 per cent were contributed to the voting trust and were held by three families including that of the testator. The shares not in the trust were held in only 33 ownerships. None of the shares of the company had ever been traded in or listed on any stock exchange, and between the date of the creation of the voting trust in 1937 and the date of the testator's death in 1942, only 4,166⅓ shares of stock had been sold, and there had been no sales of shares represented by trustees' certificates. The testator, as a director of the corporation and a trustee of the voting trust agreement, was fully aware of the nonpublic character of the stock, and it is reasonable to assume that when he executed his will he had in mind the disposition of specific shares owned by him.

■ In our opinion, the findings and conclusion of the trial court that the bequests of stock to the children and to appellant were specific are supported by the evidence. All of the stock was closely held, and the shares bequeathed were specifically referred to as being represented by trustees' certificates. Those bequeathed to the children were further identified as shares now ''in my estate.'' The bequest of stock to appellant was coupled with a gift of $30,000 in cash, and, since the testator was financially able to have made a larger cash bequest, the separation of the legacy into stock and money is an additional indication that he intended the bequest of stock to be specific. (*Fidelity Nat. Bank & Trust Co.* v. *Hovey*, 319 Mo. 192 [5 S.W.2d 437, 73 A.L.R. 1228]; *Metcalf* v. *Framingham Parish*, 128 Mass. 370; *Douglass* v. *Douglass*, 13 App.D.C. 21; *New Albany Trust Co.* v. *Powell*, 29 Ind.App. 494 [64 N.E. 640].)

The case of *Estate of Jones*, 60 Cal.App.2d 795 [141 P.2d 764], is clearly distinguishable since the securities there in question were unregistered bearer bonds listed on the public

stock exchanges, and all of the surrounding circumstances indicated that the testator intended the bequests to be general in character.

In view of the ademption to the extent of 5,000 shares, we must determine whether the legacies are to abate proportionately or whether there are preferred legatees. The trial court decreed that since appellant is a stranger in blood, the ademption should be borne entirely by her. Section 752 of the Probate Code provides that: "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and *legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator.*" (Italics added.) The part of the section italicized above was substituted by amendment in 1939 for a clause which read as follows: "legacies to a spouse or to kindred are chargeable only after legacies to persons not related to the testator."

Prior to the 1939 amendment there was some uncertainty as to whether the preference accorded to kindred was limited to a situation where the legacies could not be paid in full because of the depletion of assets due to the payment of debts. (See *Estate of Apple,* 66 Cal. 432 [6 P. 7], which discussed the effect of §§ 1361 and 1362 of the Civil Code, and *Estate of Wever,* 12 Cal.App.2d 237 [55 P.2d 279], construing § 752 of the Probate Code which superseded the Civil Code sections.) It is unnecessary to set out here the legislative history of the statute or to discuss the causes of the confusion since all uncertainty has been eliminated by the 1939 amendment. ▪ A legacy abates where there is a deficiency of assets (*Estate of Neistrath,* 66 Cal. 330 [5 P. 507] ; 4 Page on Wills (Lifetime ed.), [1941], § 1493, p. 313), and the abatement may take place where the total amount of property described in a specific bequest exceeds that on hand at the time of the testator's death, as well as where the deficiency is caused by the existence of debts which must be paid before legacies. (4 Page on Wills (Lifetime ed.), [1941], § 1493, p. 313 ; § 1500, pp. 333-334.) ▪ It is clear that, as the section now reads, a spouse or kindred are given priority over strangers for the protection of legacies whenever there is a deficiency of assets, whether to pay debts or to satisfy legacies, unless a different intention is expressed in the will.

Appellant contends that such contrary intent is expressed by the division of shares into equal amounts and by the statement of the testator that "My children have all been provided

for amply under the will of my mother. . . .'' It has also been suggested that the testator showed a concern for appellant which was equal to or greater than that for his children by the provision bequeathing to her 5,000 shares of stock and ''in addition thereto'' $30,000. It is argued that she could not receive the money ''in addition'' to the stock unless she received the stock.

As we have seen, extrinsic evidence was introduced on the general subject of the testator's intent, but our attention has not been called to any specific evidence which bears on this particular problem, and we do not find that ''a different intention is expressed in the will'' within the meaning of section 752. In order to defeat the preference accorded to the children under the statute, it must affirmatively and unequivocally appear that such was the testator's intent. The fact that appellant and each of the children were given the same number of shares can reasonably be construed to show only what the testator intended had there been enough stock in the estate to satisfy the bequests in full. Ordinarily a testator is deemed to have acted on the belief that his estate would be sufficient to satisfy all legacies in full unless there has been some expression by the testator to indicate an expectation on his part of a possible insufficiency of assets. (*In re McDonald's Estate,* 314 Ill.App. 148 [41 N.E.2d 128, 130]; *Emery* v. *Batchelder,* 78 Me. 233 [3 A. 733, 735, 737]; *In re Weed's Will,* 213 Wis. 574 [252 N.W. 294, 296].)

Neither the fact that the testator gave each legatee the same amount of stock nor the fact that ''in addition thereto'' he made the cash provision for appellant shows that the testator intended to deprive his children of the preference accorded them by statute. in the event there was not enough stock to satisfy all of the bequests. Nor do we find such an intent expressed in the reasons given by the testator for not making more generous provision for his children. He explained that they had been amply provided for by his mother, but he stated that ''nevertheless, as a final and personal bequest I give and bequeath to each of them 5,000 shares of the capital stock of the Belridge Oil Company.'' He thus evidenced an intent that notwithstanding the provision which had been made for them by his mother, he desired to make each of them a personal gift of the stock. Certainly it cannot be said that he thereby intended to place his children in a less favorable position than that accorded them by statute.

The cases relied upon by appellant are clearly distinguishable. In *Estate of Fairfield*, 12 Cal.App.2d 30 [54 P.2d 739], it was held that the testator, in stating "I have made the above bequest to my friends . . . and especially wish them to have the property I have given them," expressed an intention to show a preference favoring them over relatives. In the *Estate of Greenwald*, 25 Cal.App.2d 657 [78 P.2d 232], the will contained language which showed that the testator had in mind the possibility that his estate might not have sufficient assets to pay all legacies and that in the event of sale of any of the property the proceeds should be divided proportionately between the beneficiaries. The court held that it sufficiently appeared from the language that the testator intended that all the legatees, without regard to kinship, should share proportionately in any assets available for distribution.

In our opinion the trial court in the present case properly determined that no intention was expressed in the will which precluded the application of the statutory provision relative to abatement.

The order is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.