## Thornton Estate.

Argued October 6, 1965. Before BELL, C. J., MUS-MANNO, JONES, EAGEN and O'BRIEN, JJ.

*Paul A. Simmons,* with him *Tempest & Simmons,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE JONES, March 22, 1966:

Sarah Thornton (testatrix), by will, devised: (1) property located at 416 Marne Avenue, Monongahela, known as Lot 1, to her daughter, Eugenia T. Dumas; (2) property located at 508 Marne Avenue, Monongahela, known as Lot 2, to her son, Junius Thornton; (3) property located at 90 Third Avenue, Monongahela, known as Lot 3, to her grandson, Norman Thornton,[1] for life and, upon his death, the remainder to his two children, Gertrude and Michael Thornton.[2]

Testatrix' personal estate was insufficient to pay her debts and administration expenses and it became necessary to sell testatrix' three pieces of realty; such realty was sold with court permission. After the payment of testatrix' debts and administration expenses and at the audit of the estate, the question was raised whether, under §751(2) of the Fiduciaries Act of 1949,[3] the gift to testatrix' grandson, Norman Thornton, and his children should be abated in favor of the gifts to testatrix' children, Eugenia Dumas and Junius Thornton.

The Orphans' Court of Washington County decreed that the amount necessary for the payment of testatrix' debts and administration expenses should be

---

[1] The son of Junius Thornton.

[2] Great-grandchildren of testatrix.

[3] Act of April 18, 1949, P. L. 512, §751, 20 P.S. §320.751.

pro rated between the three devisees in proportion to the ratio of the prices received for each property separately at the sales to the total amount received from all sales. From that decree Mrs. Dumas has appealed.

The gravamen of the controversy lies in the meaning of the word "issue" under §751, supra. Section 751 provides, inter alia:

"Order of abatement

"(a) General rules. Except as otherwise provided by the will, if the assets are insufficient to pay all claimants and distributees in full, the shares of distributees, without distinction between real and personal estate, shall have priority of distribution in the following order: (1) Property specifically devised or bequeathed to or for the benefit of the surviving spouse; (2) Property specifically devised or bequeathed to or for the benefit of the decedent's *issue*; (3) Property specifically devised or bequeathed to or for the benefit of other distributees; . . ." (Emphasis supplied).

Since testatrix died without a surviving spouse, was the property devised to testatrix' grandson and great-grandchildren "property specifically devised . . . to or for the benefit of decedent's *issue*"[4] under §751(a)(2)? Mrs. Dumas contends the grandson and great-grandchildren are not "issue" within the statute and, therefore, the specific devise to them should abate in favor of testatrix' children, Mrs. Dumas and Junius Thornton.

At the outset, two things must be noted: (a) the three devises in testatrix' will were "specifically devised" within the meaning of §751(a)(2); nowhere in this will do we find evidence—as did the court below—of either an express or implied intent on the part of the testatrix as to an abatement preference, hence the phrase "Except as otherwise provided by the will" in §751(a) is presently inapposite.

---

4 Emphasis supplied.

Mrs. Dumas submits that a pro rata abatement among the *three* devisees is not required because, under §751(a)(2), testatrix' grandchild and great-grandchildren are *not* her "issue", which, in the context of Mrs. Dumas' submission, means offspring *next in line* to take from testatrix and not progeny in a line of inheritance.[5] The logical sequence of such submission is that the grandchild and great-grandchildren would be classed as "other distributees"—the least favored class—under §751(a)(3).

The *statutory* use of "issue" under §751(a)(2) has never been determined by this or any other court in the Commonwealth.

In the inner structure of §751(a) we find our first aid in interpretation. The most favored type of devise or bequest—the specific devise or bequest—is divided, in order of priority, into gifts (1) to "surviving spouse", (2) to "decedent's issue" and (3) to "other distributees." Agreement with Mrs. Dumas' contention would lead to the conclusion that "issue", other than "issue" *next in line* from testatrix, would be classified as "other distributees" and we would reach the anomalous result that the order of abatement in the case at bar would be: (1) specific devises to spouse—here, none; (2) specific devises to those offspring *next in line* to take from testatrix—here, testatrix' son and daughter; (3) specific devises to "other distributees", here, testatrix' grandson and great-grandchildren who would then occupy a status no higher than that of complete strangers to the blood.

Common sense would seem to dictate that a more equitable and logical categorization would be reached by defining "issue" in such manner that testatrix' offspring in different generations who receive specific de-

---

[5] Since testatrix' grandchild has a living father, if we accept Mrs. Dumas' definition of "issue", neither such grandchild nor his children would be offspring next in line to take from testatrix.

vises would be favored more than non-related "distributees."[6] Grandchildren and great-grandchildren should for this purpose be treated similarly to children and not like complete strangers to the blood. Such result can only be realized by interpreting "issue" in broader terms than Mrs. Dumas suggests, i.e., as offspring related in a line of inheritance. Cf. *Howlett Estate,* 366 Pa. 293, 297, 77 A. 2d 390, 393. "Issue" would then attain the status of a favored class rather than a description of a few favored individuals.

Both the court below and Mrs. Dumas have insisted that the Pennsylvania Statutory Construction Act of 1937 (May 28, 1937, P. L. 1019, §101(56), as amended, 46 P.S. §601(56)) lacks any relevancy to the instant controversy because, even though that statute defines "issue" when used in a Pennsylvania statute as ". . . all lawful, lineal descendants of a common ancestor", it only applies by its very terms to the descent of estates, i.e., cases of intestacy.[7] We agree that the Statutory Construction Act is not directly apposite to the case at bar, but *we believe that it is the most relevant analogy that exists.* For Statutory Construction Act purposes, "issue" under intestacy laws constitutes a legislative mandate designating a favored class *to receive* decedent's estate. For order of abatement purposes in the Fiduciaries Act, "issue" constitutes a legislative mandate determining a favored class *to keep* that part of decedent's estate which has already been specifically devised or bequeathed. The use of "issue" in both statutes, in the context of distribution of es-

---

[6] That "issue" are more favored than relatives of the testatrix other than lineal offspring is, of course, a legislative determination which is not questioned by any theory before this Court.

[7] The entire subsection (56) reads: " 'Issue', as applied to the descent of estates, means all lawful, lineal descendants of a common ancestor." Since descent of estates only occurs in cases of intestacy, it follows that "issue" is defined in the context of intestacy rights.

tates, has as its purpose the protection of certain classes of relatives; in that respect a similarity of purpose is extant.

Mrs. Dumas rejects this conclusion by pointing out that prior case law which defines "issue" as progeny next in line to take from testator should be the preferred interpretation for "issue" under the Fiduciaries Act. See, e.g., *Collins Estate,* 393 Pa. 195, 209, 142 A. 2d 178, 186; *Butler Estate,* 364 Pa. 279, 283, 72 A. 2d 110, 112; *Lippincott Estate,* 349 Pa. 538, 545, 37 A. 2d 599, 603; *Mayhew's Estate,* 307 Pa. 84, 91, 92, 160 A. 724, 726, 727. However, this line of cases defines "issue" in the context of what the *testator* was presumed to have intended by his choice of that word, sometimes buttressed by other language in the particular will under consideration. On the other hand, the Statutory Construction Act's definition of "issue" is not based on a legislative presumption of what *decedent* might have intended if he had written a will but rather on a *state policy* of what class of people should be favored if decedent has made no such provision. Similarly, the statutory order of abatement is not based on *testator's* presumed priority of abatement but rather on a *state policy* of what class of people should keep their specific devises and bequests at the expense of other specific devisees and legatees who must first pay for the estate's deficiencies.

Our definition of "issue" in §751(a) of the Fiduciaries Act, in conformity with subsection (56) of the Statutory Construction Act (46 P.S. §601(56)), renders the Pennsylvania order of abatement similar in result to that provided in §752 of the California Probate Code. If there were nothing but specific devises or bequests, as in the case at bar, California would have a priority of abatement similar to Pennsylvania (i.e., (1) spouse, (2) issue, (3) other distributees), which would read (1) spouse (2) *kindred* (3) non-

relatives:[8] *Estate of Buck,* 32 Cal. 2d 372, 196 P. 2d 769 (1948); *Estate of Stevens,* 27 Cal. 2d 108, 162 P. 2d 918 (1945). The only difference between the two statutes is that the California classification of "kindred" includes the Pennsylvania "issue" of testator *plus* all other relatives, creating the logical, easily recognized division between relatives and the least favored group of strangers to the blood. "It is clear that, as the section now reads, a spouse or kindred are given priority over strangers for the protection of legacies whenever there is a deficiency of assets, whether to pay debts or to satisfy legacies, unless a different intention is expressed in the will." *Estate of Buck,* 196 P. 2d 769, 772.

If Mrs. Dumas' contention be accepted in the instant case, there would only be the two extremely narrow groups of (1) spouse and (2) those offspring next in line to take from testator ("issue") with the rest of the specific devisees and legatees heaped into one undifferentiated class of "other distributees". We believe that the Pennsylvania legislature had a different, more symmetrical classification in mind—similar to that in California, supra—by employing "issue" as a broad *class* of "all lawful, lineal descendants of a common ancestor." (46 P.S. §601(56)).

Decree affirmed. Costs on the appellant.

---

[8] The entire Section 752 of the California Probate Code is as follows: "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator."