T.C. Memo. 1996-488


UNITED STATES TAX COURT


ESTATE OF BONNIE J. LISTON HARDEN, DECEASED,
DAVID J. KOTLER, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9333-94.                    Filed October 30, 1996.


<u>Steven R. Mather</u> and <u>Elliott H. Kajan</u>, for petitioner.

<u>Jack H. Klinghoffer</u>, <u>Robert H. Schorman, Jr.</u>, and <u>Michele F. Leichtman</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  By notice of deficiency dated March 9, 1994, respondent determined a deficiency in, and additions to, petitioner's estate tax as follows:

| Deficiency | Additions to Tax | |
| | Sec. 6653(a)(1) | Sec. 6651(a)(1) |
| $359,822 | $17,991 | $89,956 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are as follows:

1.  Whether the notice of deficiency was issued prior to the expiration of the 3-year limitations period provided for in section 6501(a).  We hold that the notice was issued in a timely manner.

2.  Whether petitioner, pursuant to section 2040, is entitled to exclude from the gross estate $158,942 of joint tenancy property.  We hold that petitioner is not so entitled.

3.  Whether petitioner, pursuant to section 2053(a)(3), is entitled to deduct from the gross estate $363,458 and $306,563 relating to two promissory notes.  We hold that petitioner is not so entitled.

4.  Whether petitioner, pursuant to section 2054, is entitled to deduct from the gross estate $300,000 as a theft loss.  We hold that petitioner is so entitled.

5.  Whether petitioner, pursuant to section 6653(a)(1), is liable for an addition to tax for negligence.  We hold that petitioner is liable.

6. Whether petitioner, pursuant to section 6651(a)(1), is liable for an addition to tax for failing to file its estate tax return in a timely manner. We hold that petitioner is liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time of her death, on January 28, 1989, Bonnie Harden resided in South Lake Tahoe, California. At the time the petition was filed, the executor resided in Los Angeles, California.

Earl and Bonnie Harden were married and lived together in South Lake Tahoe, California, until Earl's death in February of 1985. Previously Earl and Bonnie had both retired from the business of selling and installing countertops. Although Earl had severe physical limitations (i.e., he was confined to a wheelchair) as a result of a fall in 1981, he continued to make decisions independently. Earl and Bonnie had one adult son, Rory.

In 1981, Earl and Bonnie met David Kotler, and they quickly became close friends. David was an accountant. He graduated in 1976 from Long Island University, C.W. Post School of Professional Accountancy, in New York. After graduating, he moved to California. During the course of his career, he was employed by accounting firms and defense contractors.

Although David lived in Culver City, California, he visited Earl and Bonnie approximately once a month. Bonnie and Earl gave David a room in their house and access to their cars and boats. He would often take Earl, who could not leave the house without assistance, to gamble and see shows in casinos.

Harvey Kotler, David's brother, also developed a close relationship with Earl and Bonnie. He was a certified public accountant who lived in Culver City, California. He visited Earl and Bonnie approximately six times a year.

## I. Earl's Will

Bonnie valued David's knowledge of accounting and financial matters, and in 1981 she asked him to prepare tax returns for her and Earl. David agreed and prepared individual income tax returns for Bonnie and Earl from 1981 through 1989. Bonnie gave David access to all of her records, which she maintained in filing cabinets in her garage.

In early 1984, Bonnie asked her attorney, Lake Trout, to draft a will for Earl. On July 4, 1984, after two meetings with Lake, Earl executed the will. The will provided that Bonnie would serve as the executrix of Earl's estate. It further provided for legacies to David and Harvey as follows:

> SEVENTH: In honor of their long and loyal comfort and support to me and my family, I hereby give $150,000 each to DAVID KOTLER and HARVEY KOTLER; provided that if my wife/executor/primary beneficiary, BONNIE J. HARDEN, determines that immediate payment of such gifts

would be burdensome to her/my estate, then she may
execute promissory notes in their favor with such
interest rate and on such terms as she deems reasonable
and appropriate; provided that she shall remain liable
on such notes to the extent she continues to utilize
any funds from my estate which otherwise would have
been used to satisfy such bequests/gifts.

Earl's will also provided for a $150,000 legacy to be held in a spendthrift trust for the benefit of Rory and a $5,000 legacy to David and Harvey to finance a party in remembrance of Earl on the first anniversary of his death. The residue of the estate and Earl's personal effects were bequeathed to Bonnie.

Earl died in February of 1985. At the time of his death, he held a one-half interest in a promissory note receivable from Shoshone Coca-Cola Bottling Co., Inc. (the Shoshone Note). The Shoshone Note had a principal balance of $417,600 due to be repaid in 1994. After Earl's death, Bonnie took possession of the Shoshone Note.

Earl's will was never probated, and no distributions were made to Rory, David, or Harvey. Bonnie, however, decided to pay each of them an amount equal to his respective legacy under Earl's will. On October 20, 1986, Bonnie deposited $150,006.59 in an account she and Rory held as joint tenants (the Joint Tenancy Account). Bonnie made additional deposits of $6,357.36 on October 30, 1986, and $100,017.60 on December 19, 1986. The Joint Tenancy Account had a balance of $317,879.35 on January 28, 1989, the date Bonnie died. On October 1, 1987, Bonnie executed

a promissory note in favor of David and Harvey (the Kotler Note). The Kotler Note provided for payment on April 1, 1992, of $305,000 plus 10 percent interest compounded annually.

## II. The USM Investment

In 1988, a representative of USM Funding, Inc. (USM), approached Bonnie about an investment in USM. The representative informed Bonnie that USM was a factoring business that purchased accounts receivable from small businesses. At Bonnie's request, David investigated USM's operations. Upon completing his investigation, David informed Bonnie that an investment in USM would be profitable. Bonnie then discussed the investment with a USM representative and on December 18, 1988, executed a document entitled "SUBSCRIPTION AGREEMENT". The agreement provided that, after January 1, 1989, Bonnie would invest $300,000. On January 6, 1989, USM sent Bonnie a letter demanding receipt of the $300,000 on or before January 20, 1989.

On January 17, 1989, Bonnie's will was executed. Her will provided that all property would pass to a spendthrift trust for the benefit of Rory. It further provided that David would serve as the executor and trustee.

On January 28, 1989, Bonnie died. On March 17, 1989, David assumed his duties as executor of Bonnie's estate. In his role as executor, he responded to USM's demand letter. Because petitioner did not have sufficient liquid assets to make the

investment, David asked Rory to lend petitioner $300,000. Rory liquidated the Joint Tenancy Account and lent $300,000 to petitioner. Petitioner then invested the $300,000 in USM. On April 24, 1989, David executed, on behalf of petitioner, a promissory note in favor of Rory. The note obligated petitioner to repay, on April 24, 1994, the $300,000 and 10 percent interest compounded annually.

The USM investment initially performed as expected. USM made the first two payments on schedule. In October of 1989, however, the payments stopped. In November of 1989, David conducted additional investigations of USM and concluded that the business was a sham, and that petitioner's funds had not been invested. In December of 1989, David demanded a $300,000 refund. Soon thereafter, David learned that the USM representative had embezzled the $300,000, and that USM had filed for bankruptcy protection. Petitioner did not recover its $300,000 investment.

III. Filing of Estate Tax Return

On October 23, 1989, petitioner mailed a Form 4768 (Application for Extension of Time to File U.S. Estate (and Generation-Skipping Transfer) Tax Return and/or Pay Estate (and Generation-Skipping Transfer) Tax(es)). On the form, petitioner requested an extension of time, until April 28, 1990, to file a return and an extension of time, until October 28, 1990, to pay

taxes.  The request was granted by the Internal Revenue Service on November 21, 1989.

On April 19, 1990, petitioner mailed another Form 4768.  On the form, petitioner requested an extension, until January 15, 1991, to file the return and pay taxes.  On May 21, 1990, the request was returned with notations indicating that it had been denied.  A handwritten note accompanied the forms and explained that second extension requests were approved only in very limited circumstances.  The note further stated that petitioner should file a return immediately
 and amend it later if necessary.

On March 11, 1991, the Internal Revenue Service's Denver, Colorado, service center received petitioner's Form 706 (United States Estate (and Generation-Skipping Transfer) Tax Return).  On March 9, 1994, respondent issued a notice of deficiency to petitioner.

OPINION

I.  <u>Statute of Limitations</u>

Section 6501(a) provides that estate tax shall be assessed within 3 years after a return is filed.  Pursuant to section 6503(a), this period of limitations is suspended upon the mailing of a statutory notice of deficiency.  The expiration of the period of limitations on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the

burden of proving its applicability.  Rules 39, 142(a).

Petitioner must make a prima facie case establishing the filing

of its return, the expiration of the statutory period, and

receipt or mailing of the notice after the running of the period.

Coleman v. Commissioner, 94 T.C. 82, 89 (1990).

The notice of deficiency was mailed to petitioner on March

9, 1994.  Petitioner contends that it mailed a return by first-

class mail on June 1, 1990, and an amended return on October 28,

1990.  Respondent has no record of receiving either of these

returns.  According to respondent's records, petitioner's return

was received on March 11, 1991, less than 3 years before the

mailing of the notice of deficiency.  Consequently, we must

determine whether petitioner has established that it filed either

of the alleged prior returns.

Under the common law mailbox rule, the proper mailing of a

return gives rise to a rebuttable presumption of delivery.

Anderson v. Commissioner, 966 F.2d 487, 491 (9th Cir. 1992);

Smith v. Commissioner, T.C. Memo. 1994-270, affd. without

published opinion 81 F.3d 170 (9th Cir. 1996).  Petitioner

contends that, pursuant to this rule, it has established that the

prior returns were delivered.  David and Harvey testified that

they properly mailed the returns by handing an appropriately

addressed envelope to a post office clerk.  Petitioner contends

that these facts are analogous to the facts in Anderson v. Commissioner, supra.

In Anderson, the U.S. Court of Appeals for the Ninth Circuit applied the common law mailbox rule and, based on the taxpayer's testimony, concluded that the return had been delivered. The decision in Anderson rested on credible testimony that a return had been mailed. After observing David and Harvey's demeanor at trial, we conclude that their testimony on this point was not credible. Therefore, Anderson is distinguishable, and we conclude that petitioner did not file any returns other than the return received by respondent on March 11, 1991.

Accordingly, we reject petitioner's contention that the period of limitations for assessment had run prior to respondent's issuance of the notice of deficiency.

## II. The Joint Tenancy Account

Petitioner excluded from the gross estate one-half of the value of the Joint Tenancy Account (i.e., $158,942). Section 2040(a) provides that the value of the gross estate shall include the value of all property held in joint tenancy, except such portion as is shown to have (1) originally belonged to the surviving tenant and (2) never to have been received or acquired by the surviving tenant from the decedent for less than adequate and full consideration in money or money's worth. Petitioner contends that half the value of the Joint Tenancy Account is, for

purposes of section 2040(a), attributable to Rory because Earl's will provided for a bequest of $150,000 to be held in trust for Rory.  Respondent disagrees with this contention.

To resolve this issue we must first determine what, if anything, of value passed to Rory pursuant to Earl's will.  Under California law, a legacy is ineffective to the extent there are insufficient assets to fund it.  Where this occurs, the legacy is said to abate.  See In re Buck's Estate, 32 Cal. 2d 372, 376 (1948).  California Probate Code section 750 provides that creditors' claims have priority over legacies.  Cal. Prob. Code sec. 750 (West 1956) (repealed).[1]  Thus, if a decedent does not make adequate provision for the payment of debts, funds otherwise distributable to legatees must be used to satisfy creditors.  Id.

Petitioner bears the burden of substantiating consideration relating to the Joint Tenancy Account.  Sec. 6001; New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1934); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curium 540 F.2d 821 (5th Cir. 1976).  Petitioner, in its attempt to establish the existence and value of Earl's assets, relied on vague unpersuasive testimony and inadequate documentation.  Petitioner did adequately substantiate that, at the time of Earl's death,

---

[1]  California Probate Code sec. 21406 provides that repealed sections concerning abatement continue in effect for legacies made prior to July 1, 1989.  Cal. Prob. Code sec. 21406 (West 1991).

Earl held a one-half interest in the Shoshone Note and that the note had an unpaid principal balance of $417,600. Petitioner has not, however, established the note's value. Moreover, petitioner has not provided a reliable account of Earl's liabilities. This incomplete picture of Earl's financial status is inadequate to satisfy petitioner's burden to substantiate an exclusion under section 2040(a) for one-half of the value of the Joint Tenancy Account. The claims of creditors may have reduced or eliminated the amount of funds available to satisfy Rory's legacy. Thus, petitioner has failed to prove that any of the funds in the Joint Tenancy Account originally belonged to Rory and were not received by him from the decedent for less than full and adequate consideration in money or money's worth.

Accordingly, we conclude that petitioner has failed to meet its burden of proving that one-half (or any part) of the value of the Joint Tenancy Account was excludable from the gross estate under section 2040(a).

III. The Kotler Note

Petitioner deducted from the gross estate $363,458 relating to the Kotler Note. With respect to indebtedness based on a promise or agreement, section 2053(a)(3) allows a deduction from the gross estate to the extent the indebtedness was contracted bona fide and for adequate and full consideration in money or money's worth. Sec. 2053(c)(1)(A). Petitioner contends that the

legacies to David and Harvey constituted adequate consideration for the Kotler Note. Respondent disagrees with this contention.

In the previous section, we concluded that petitioner has not substantiated the amount or value of assets held by Earl at the time of his death and that claims of creditors may have reduced or eliminated the amount of funds available to satisfy legacies.

Even if we were to assume that Earl had sufficient assets at the time of his death to pay the legacies to David and Harvey, petitioner would not be entitled to the deduction. Pursuant to Earl's will, Bonnie, in her role as "executor", had the option to allow David and Harvey each to receive either $150,000 or a promissory note for that amount. She chose to give them the Kotler Note.[2] David and Harvey did not relinquish anything of value in exchange for this note. Further, the indebtedness was not contracted bona fide, because David and Harvey had no choice but to accept the Kotler Note on whatever terms Bonnie dictated. Accordingly, we conclude that petitioner has failed to meet its burden of proving that the Kotler Note was supported by full and adequate consideration in money or money's worth.

IV. The USM Investment

---

[2] The $305,000 principal balance of the Kotler Note included $5,000 for David and Harvey to host a party in remembrance of Earl.

Petitioner contends that, pursuant to section 2053(a)(3), it is entitled to a deduction for USM's claim under the "SUBSCRIPTION AGREEMENT".  Under section 2053(a)(2), claims against an estate are deductible.  To be entitled to this deduction, petitioner must establish that the claim was enforceable.  Sec. 20.2053-4, Estate Tax Regs.  Petitioner bears the burden of proof.  Rule 142(a).

In support of its claim, petitioner produced a copy of a document entitled "SUBSCRIPTION AGREEMENT".  It provided as follows:

> I Bonnie J. Harden agree upon demand at any time after January 1, 1989 to invest $300,000.00 (Three Hundred Thousand Dollars) in USM Funding Inc., in accordance with the "Accounts Receivable Management and Co-Factoring Agreement" which has been reviewed by me.

Petitioner failed, however, to produce the Accounts Receivable Management and Co-Factoring Agreement.  As a result, petitioner has not established that the Subscription Agreement was enforceable.

Petitioner contends in the alternative that, pursuant to section 2053(a)(3), it is entitled to a deduction relating to the promissory note issued to Rory.  Section 20.2053-4, Estate Tax Regs., provides that only amounts representing obligations at the time of the decedent's death may be deducted under section 2053(a)(3).  Bonnie died before petitioner borrowed the funds and

issued a promissory note to Rory.  Consequently, the indebtedness to Rory was not Bonnie's obligation at the time of her death.

Accordingly, petitioner has failed to carry its burden of proof with respect to this issue, and it is not entitled to the deduction.

V.   Deduction for Theft

Section 2054 provides for a deduction from the gross estate for losses arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise.  Only losses of the nature described in section 2054 are deductible.  Sec. 20.2054-1, Estate Tax Regs.

Petitioner contends that the USM representative embezzled its $300,000 investment and that, for purposes of section 2054, a theft occurred.  Respondent does not refute that the $300,000 was embezzled but contends that petitioner has failed to prove that $300,000 was invested by the estate in USM.  We disagree. Petitioner has established that it invested $300,000 in USM. Moreover, it has established that the USM representative embezzled the $300,000 from petitioner.  As a result, we conclude that petitioner is entitled to a deduction for a theft loss under section 2054.

VI.   Additions to Tax for Negligence

Section 6653(a)(1) provides that if any part of any underpayment of tax required to be shown on a return is due to

negligence, there shall be added to the tax an amount equal to 5 percent of the underpayment. The term "underpayment" generally is defined as the amount of the deficiency. Sec. 301.6653-1(c)(1)(i), Proced. & Admin. Regs. The term "negligence" is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Petitioner excluded from the gross estate one-half of the value of the Joint Tenancy Account. The validity of this position depended on whether property interests passed under Earl's will, which in turn depended on the value of the assets Earl held at the time of his death. Although David knew the approximate value of Earl's assets in years prior to Earl's death, he did not know the value of Earl's assets on the date Earl died. Further, he apparently did not determine whether Earl had liabilities. Therefore, he failed to exercise reasonable care when he excluded one-half of the value of the Joint Tenancy Account. Because petitioner's underpayment of tax was due in part to negligence, respondent's imposition of the addition to tax for negligence is sustained.

VII. Addition to Tax for Late Filing

Section 6651(a)(1) imposes an addition to tax for failure to file a return prior to the due date, including extensions, unless

it is shown that the failure is due to reasonable cause and not due to willful neglect.  A failure to file in a timely manner is due to "reasonable cause" if the taxpayer exercised "ordinary business care and prudence" and was nevertheless unable to file the return within the time prescribed.  United States v. Boyle, 469 U.S. 241, 245 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  The burden of proof is on the taxpayer.  Rule 142(a); Ehrlich v. Commissioner, 31 T.C. 536, 540 (1958).

Petitioner claims that its failure to file its return in a timely manner was due to reasonable cause in that respondent failed to stamp on petitioner's first extension request that further extensions would be available only in limited circumstances.  David, however, was an accountant.  He was experienced and knowledgeable in tax matters.  Further, petitioner knew that the second extension request had to be approved by respondent and that, if it were not approved, a return would have to be filed immediately.  Whether respondent informed petitioner of the likelihood that a second extension would be granted is not determinative.  Petitioner simply failed to meet the deadline for filing under the first extension. Consequently, petitioner's contention is without merit, and petitioner is liable for the section 6651 addition to tax.

We have considered petitioner's other arguments and found them to be without merit.

To reflect the foregoing,

Decision will be entered
under Rule 155.